### GIBSON et al. v. CHICKASHA COTTON OIL CO.

No. 21167. Opinion Filed July 19, 1932.

Rehearing Denied Oct. 18, 1932.

Rittenhouse, Lee, Webster & Rittenhouse, for plaintiffs in error.

Melton & Melton, for defendant in error.

KORNEGAY, J. This was an action in the lower court by an insurance company against a cotton gin company for the purpose of recouping its loss by reason of having paid the amount of a fire loss to a hotel-keeper, for the destruction of the hotel and furniture therein, in the town of Ringling. The policy of insurance was introduced in evidence, as well as an assignment or subrogation agreement. The pleadings on behalf of the insurance company were objected to as not being sufficiently definite, and they were amended, and the gin company set up the fact that the petition was not sufficient to make a case, and also the fact that the loss that the insurance company was suing for under its plea of subrogation had been settled in a suit had between the grantor and the insured and the gin company, which had resulted in a judgment for a small amount and had been paid. There was a good deal of proof as to just what this covered, and it clearly developed that it was for the amount that was claimed by the owner very greatly reduced, in fact, a very small percentage of what was claimed in the suit. Whether the jury rendered a verdict for that or whether it was a consent judgment, is not clearly shown in the record.

The case that the plaintiff had was based on the proposition of the fire being caused by sparks, negligently allowed to escape from the smokestack of the gin company. The evidence relied upon to establish causal connection was circumstantial, and one of the main circumstances relied upon was the fact that the wind was blowing from the northwest a stiff gale, and had possibly or probably carried sparks that had been emitted from the top of the smokestack of the stationary boiler used to furnish power for the ginning operations.

Evidently the witnesses disappointed the attorneys, as some two of the attorneys went on the stand to testify that they had been informed by some of the witnesses that the wind was blowing from the northwest, instead of the west, as claimed by the witnesses, and also that they had been told by one of the witnesses that he had seen sparks coming from the gin down towards and over the hotel that was burned. The fire occurred about 2 o'clock in the afternoon apparently on a clear day and in dry weather. The court let this in for impeachment purposes, and the attorney for the gin company desired the court to instruct the jury that it was not competent to prove any substantive facts in the suit. The attorney for the insurance company objected to the court's so doing, but there seems to have been no ruling at the time by the court on the subject.

Some more discrepancies were testified to by the attorneys for the plaintiff, as between the details as the witnesses stated on the stand and what they claimed had been told them before the trial. When the parties were through with their evidence, the defendant below demurred and it was overruled and the defendant then put on its evidence. At the conclusion of plaintiff's evidence, there was scarcely any evidence from which it could be logically deduced that the gin company had been negligent in its operations, and there was nothing more perhaps than a suspicion that the fire had originated from a spark emitted from the smokestack of the engine boiler that was used by the company in its plant.

The defendant introduced a lot of evidence to show that the plant was up to date, and was equipped with spark arrestors, and that it was using natural gas for fuel at the time, though perhaps if there were bolls on the yard they were burned in the fire box of the boiler. At the conclusion of all the evidence, after the usual motions that are made by litigants for instructions, the court instructed the jury and the jury returned a unanimous verdict for the defendant. An examination of the evidence is convincing that the verdict was justified on the evidence adduced, and there scarcely could have been logically any other verdict under the circumstances, as the circumstances relied upon apparently originally by the attorneys did not develop in accordance with expectations.

The plaintiff requested some instructions, based upon what negligence is, and also upon spark arrestors and proximate cause, and the reduction of recovery by the amount of $400 paid to the plaintiff Mattie Gibson,

"in compromise settlement of her excess loss over and above the proceeds of insurance received by her from the Springfield Fire & Marine Insurance Company, and less the further sum of $250 received by the plaintiff Mattie Gibson from the defendant, Chickasha Cotton Oil Company, in compromise settlement of her excess loss on furniture and fixtures contained in said building. * * *" Another instruction was on the basis of hulls and waste being used in the fire box, all of which were refused. The defendant requested a lot of instructions, among others a peremptory, and that the cause in tort was not assignable, and a limit of recovery of two-thirds the amount paid, and the presumption as to negligence, and, among other things, instruction No. 5, as follows:

"Certain evidence has been offered in this case with reference to a settlement made with Mrs. Gibson for damages to the property destroyed by the fire; this evidence cannot be considered by you in determining whether or not the defendant herein was negligent."

Another instruction on the subject of the cause of the trouble was asked for, and failure to find that the hotel was destroyed by fire, with a reference to Hill v. C., R. I. & P. Ry. Co., 98 Okla. 128, 224 P. 503. There is a proposition concerning spark arrestors and ordinary care. The court, in effect, gave instruction No. 5, asked for by the defendant.

The defendant in error has filed a lengthy brief, but finally sifts it down to the proposition of the court's having erred in giving this instruction. The pleadings, exhibits, and evidence are largely set out in the brief, and some text-writers and some extracts from cases from Texas, Iowa, Indiana, South Carolina, Washington, Oregon, Michigan, Wisconsin, Georgia, New Hampshire, California, Vermont, and Rhode Island are cited.

The brief of the defendant in error cites a lot of cases on the admissibility of compromise agreements, and cites cases from Georgia, from New York, from the Atlantic Reporter, from Iowa, and undertakes to distinguish as to when an offer of compromise is admissible and when it is not, and laments the fact that the Supreme Court of Oklahoma has not rendered decisions on the point directly involved, namely, whether the court committed reversible error in charging the jury that the evidence as to the settlement with Mrs. Gibson could not be considered in determining whether or not the defendant was negligent.

By reference to any standard work on

evidence, one will find the rules laid down as to the admissibility in evidence of compromise settlements, and there are cases in Oklahoma discussing some of the rules on the subject of admitting compromise settlements. The general rule is not to admit them as admissions of substantive facts, and, as applied to the present case, of negligence. The present case depends on negligent acts of the defendant. Chamberlayne on Modern Law of Evidence, sec. 1440, fairly expresses the rule, as follows:

"1440. The Rule of Exclusion.—So highly does the positive law regard the attainment of peace between parties to a controversy, that a rule of procedure, the substantive law applied to procedure, has, though with ever decreasing stringency, ordained that if such could reasonably have been the motive for making the offer of compromise it will be taken, as matter of law, that such was the object. It will be assumed that the thought was to buy peace regardless of liability. It is, accordingly, the fiat of procedure that the statement should not be received against the party making it. It is peremptorily rejected, when offered for such a purpose. Any act, other than a statement, done for the purpose of facilitating a compromise settlement will be excluded for the same reasons, should the inferences from it tend to establish a concession of liability on the part of the doer. In certain jurisdictions the mere fact that an offer of compromise has been made, even that an intimation has been extended to the effect that such an offer would be made, have been treated as equally excluded by the rule of procedure. All evidence in respect to the terms of such a statement or suggestion is rejected.

"Criminal Cases.—The rule excluding offers of compromise does not extend to efforts to settle and discharge a criminal liability by compounding a felony."

As a foundation for that rule, cases are cited from about 37 states and the federal courts, as well as England and Canada. That the settlement was treated as a compromise by all parties appears from the wording of the instruction, asked for by the plaintiff in instruction No. 2, designating the amount paid as a compromise settlement. The settlements were necessarily introduced in evidence, and the court gave the precautionary instruction, probably as a result of the contention of the attorneys for the plaintiff, in objecting to the court's instruction to the jury, when the attorneys contradicted their own witnesses, that that contradiction should not be considered as evidence of the truth of the things contradicting.

The origin of the rule is probably based on human experience, as well as precepts from the Scriptures, and is crystallized into a maxim. It is a maxim of the law that it is for the best interest of the community to have lawsuits ended, or, as expressed in the Latin, "Interest rei publicae ut sit finis litium." The precept from the Sermon on the Mount, Mat. 5:25, is as follows:

"Agree with thine adversary quickly, whiles thou art in the way with him; lest at any time the adversary deliver thee to the judge, and the judge deliver thee to the officer, and thou be cast into prison."

When one reflects upon the conditions that surround corporations for profit when brought into court before a jury, whose sympathies run in the interest of the weaker side, the buying of peace that is spoken of in a great many of the cases very frequently is a prudent thing to do, and as applied to this case, we do not think the court erred in warning the jury that a settlement, which is denominated a compromise agreement, should be by them not considered as evidence of negligence on the part of the defendant in error.

We think that the court, in view of the situation, should have given the cautionary instruction, and that no reversible error was committed by the court in so doing, under the circumstances of this case, and the case is accordingly affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, and SWINDALL, JJ., concur. RILEY, ANDREWS, and McNEILL, JJ., absent.