GREAT AMERICAN LIFE INS. CO.
v. STEPHENSON.

No. 25119.   Jan. 21, 1936.

Rehearing Denied March 10, 1936.

C. W. Clift and Madden & Hubbell, for plaintiff in error.

Wm. T. Powell, for defendant in error.

PER CURIAM. On April 22, 1931, the Great American Life Insurance. Company, plaintiff in error, hereinafter referred to as defendant, issued and delivered its life insurance policy in the sum of $1,000 to John Frank Stephenson, hereinafter referred to as insured, wherein the defendant, upon the payment of the annual premium of $44.57, promised to pay to Arlie E. Stephenson, wife of John Frank Stephenson and the beneficiary named in said policy, defendant in error, hereinafter referred to as plaintiff, the face value of said policy upon the death of the said John Frank Stephenson. In payment of the first annual premium, the insured executed and delivered to defendant his promissory note for $44.57, dated April 22, 1931, due and payable on or before October 15, 1931. The insured died January 9, 1932, and after demand by plaintiff for payment and refusal by defendant, this action was commenced, which terminated in judgment for the plaintiff for the face value of the policy.

Among others, the defendant assigns as error the refusal of the trial court (1) to admit legal, competent and relevant evidence offered on the part of the defendant; and (2) overruling defendant's motion for a new trial. The first assignment named is the only one noticed or argued in defendant's brief.

In order to better understand the questions arising out of the refusal of the trial court to admit the evidence hereinafter referred to, it is necessary to review additional disclosures. By her petition, it appears, among other things, that plaintiff, on January 15, 1932, reported the death of insured and asked for papers to make proof of death. The defendant, on January 18, 1932, forwarded the necessary papers for such proof, and thereafter, on January 20, 1932, notified plaintiff to disregard papers for proof of death, and further stated that defendant had just discovered the policy had been canceled. That thereafter, on April 18, 1932, plaintiff furnished the proof of death. By its answer, defendant claimed that by agreement with the insured on or about October 15, 1931, the insured was to pay $12 as earned premium, and that after such payment, insured was to be relieved from any further liability on the note, and that the policy was to be canceled and defendant relieved from any further liability under said policy.

By testimony on behalf of defendant, it appears that about October 15 to 17, 1931, J. R. Grant, agent of defendant, called upon insured a second time to collect the amount due on the note and was informed by insured that insured could not pay. About a week after the last-mentioned date, J. R. Grant, in company with Mr. Medlock, also an agent for defendant, again called on the insured for payment, and upon being informed that insured could not pay the note, made a proposition to insured that the defendant would accept $12 earned premium, cancel the policy, and relieve insured from any further liability on the note. At such time, insured did not accept the proposition, but said he would think it over. Insured was then employed at the Farmers' Gin, which was being run and managed by E. S. Morris, who died a short time before this action was commenced. J. M. Hayes, a justice of peace in Temple, where insured lived, after a conference with defendant's agents, called upon insured concerning payment of the note. He testified that insured stated he would pay $12 if he were permitted to pay it at the rate of $3 a week, but that nothing was said between Hayes and insured about cancellation of the policy. Hayes went back a second time to see insured and informed insured that defendant

would accept $12 if E. S. Morris, manager of the gin, would stand good for the payment, and thereupon insured went to see Mr. Morris and reported Mr. Morris would stand good for the payment. By further testimony of J. R. Grant, it appears that after Mr. Hayes had talked to insured and reported the results to defendant's agents, Mr. Grant went to the gin and conferred with insured, and that it was there agreed that upon payment of the sum of $12 both the note and policy should be canceled, and after such agreement Grant and insured went to Mr. Morris and there the understanding between insured and Grant was made known to Mr. Morris. That thereafter Mr. Morris made the $12 payment and receipt for the amount was issued by defendant's agents, attached to the premium note and both the note and receipt delivered to Mr. Morris.

Defendant assigns as error the ruling of the trial court in refusing to permit defendant's witness to answer the following question: "Please state when, if ever, the policy was canceled?" The ruling of the trial court was correct. The question calls for an answer which must necessarily be based upon the assumption of the existence of the very thing which the jury was called upon to decide, to wit, whether the policy had been canceled. It necessarily calls for a conclusion of the witness and invades the province of the jury, and, therefore, the answer was properly excluded. Schlegel v. Fuller, 48 Okla. 134, 149 P. 1118; Sanley v. Wilkinson, 107 Okla. 54, 229 P. 574.

Defendant complains of the court's ruling in connection with the following question asked of defendant's witness, and the answer thereto:

"Q. After the note was delivered to Mr. Morris, what did Mr. Morris agree to do? A. He agreed to secure the insurance policy."

Objection to the question and answer was sustained by the trial court, which was tantamount to a striking of the answer. The answer should have been permitted to go to the jury under proper instructions concerning the agency of Mr. Morris, as hereinafter pointed out.

There were other questions by defendant concerning efforts to obtain the policy, objections to which were sustained, but it is needless to review them here, since the physical return of the police was not essential to a determination of the rights of the parties. It is not necessary to a valid cancellation of a policy that it be physically delivered and surrendered to the insurer. Firpo v. Slyter, 95 Cal. App. 500, 272 P. 1111; Hillock v. Traders' Insurance Co., 54 Mich. 531, 20 N. W. 571.

Defendant offered in evidence, as its exhibit "B," a duplicate of original receipt, appearing in words and figures as follows:

November 1, 193 ___.
Policy number _____ amount of note $44.57
Received of John Frank Stephenson,
Twelve—$12.00
Amount paid $12.00
Int. paid _____
Great American Life Insurance Company
By M. G.
J. K. Medlock
Total $12.00.
Compromise settlement—cancellation of policy—
  unable to do better. Bad deal all around.

Upon plaintiff's objection, this offer was excluded. The exclusion by trial court of this offer was error. This court, in Maston v. Glen Lumber Co., 65 Okla. 80, 163 P. 128, quotes the following from 10 R. C. L., par. 351, p. 1149:

"The better view is that the different numbers or impressions of a writing produced by placing carbon paper between sheets of paper and writing upon the exposed surface are duplicate originals, of which any one may be introduced in evidence without accounting for the nonproduction of the others."

The pleadings, in so many words, neither affirm nor deny that Morris was the agent of either party to this cause, but the proofs on trial did raise the issue as to this agency and the extent thereof. Counsel for plaintiff has argued in his brief that Morris was agent of defendant, and counsel for defendant have argued in their brief that Morris was the agent of insured, concerning the transactions involved in this suit. The trial court made the following statement during the trial:

"This is out of the hearing of the jury, but as far as I see it, Mr. Morris was as much the agent of the company as he was Mr. Stephenson"

—the words "company" evidently being the insurer, and "Mr. Stephenson," of course, the insured. The question of agency, when made an issue in an action at law, is one of fact to be determined by the jury under proper instructions as to the law (Dandois v. Raines et al., 115 Okla. 88, 241 P. 1099), and it is the duty of the trial court to submit, by proper instructions, the theories of both parties where there is evidence tending to support such theories. Skaggs v. Gypsy Oil Co., 169 Okla. 209, 36 P. (2d) 865.

Bouvier's Law Dictionary (3d Rev.) vol. 3, p. 2822, defines "receipt" as "a written acknowledgment of payment of money or delivery of chattels"; and the Court of Appeals, California, in the case of Southern California Music Co. v. Labes, 288 P. 1096, loc. cit. 1098, say that "a receipt is in itself not a contract, but simply an acknowledgment of the fact of the payment or satisfaction of a debt," but, in the case before us, the instrument offered as defendant's exhibit "B" was more than a receipt. Aside from the recitation concerning the payment of $12, about which there seems to be no difference between the litigants, the exhibit which was offered and refused also bears the notation "compromise settlement—cancellation of policy—unable to do better—bad deal all around." If such a writing was delivered to the insured, or to one appointed by insured to act for him in the transaction, then the evidence should have gone to the jury to be considered by it in determining whether or not the insured and the insurer had agreed to cancel the policy.

"Where it is affirmatively shown, by either direct or circumstantial evidence, that a writing or document has been brought to the attention of a party, and the circumstances are such that, if the party dissented from the statements contained therein, his dissent would naturally have been manifested by some objection, his failure to deny the accuracy thereof may be relevant as an admission, and hence the writing and the failure to object thereto may be shown in evidence. Under this rule it may be competent to show the contents of, or statements contained in, accounts or reports of sales, affidavits, bills of sale, book entries, invoices, lists of rents, notices to quit, promissory notes, recitals in a resolution of the board of directors of a corporation, records, reports of agents or lessees, sailing lists and signs." 22 C. J., paragraph 368, page 327, et seq., citing Wiggins v. Burkham, 10 Wall. 129, 133, 19 L. Ed. 884, and many other cases.

In the case of Welch v. McNeil, 214 Mass. 402, 101 N. E. 985, loc. cit. 986, the court has this to say:

"Subject to the defendant's exceptions, the plaintiff was permitted to testify that he placed and maintained for some time upon the material described as sand a sign 'Sand for Sale.' The defendant testified that he never saw or knew of the sign. But there was testimony tending to show that the pile of sand was of substantial size, and on the right of the main building near the corner of two streets, and that the defendant was frequently on the premises. The jury were not bound to believe the defendant; and if the sign was placed there by the plaintiff it constituted or could be found to constitute an assertion of title by him and if known to the defendant and not objected to by him, his conduct could be found to constitute an admission of the plaintiff's title. The evidence was, we think, plainly admissible."

In the case of Allegheny v. Nelson, 25 Pa. 332, the court held that acts of a deceased person, shown to have been done at a time when they were against his interest, might be given in evidence in a proceeding by the third parties. The liability of defendant depended upon the question as to whether or not the policy had been canceled by mutual agreement between insured and the defendant, and defendant's "Exhibit B," referred to as a receipt, should have been permitted to go to the jury under proper instructions as to agency and admission against interest.

The judgment in favor of the plaintiff is reversed and the cause remanded, with directions to grant the defendant a new trial.

The Supreme Court acknowledges the aid of Attorneys G. P. Cantrell, Wm. R. McGinnis, and Allan R. Shaw in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Cantrell, and approved by Mr. McGinnis and Mr. Shaw, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.