264 So.2d 445 (1972)
MAULE INDUSTRIES, INC., and Johnny Dunlap, Appellants,
v.
Joan L. ROUNTREE and David R. Rountree et al., Appellees.
Nos. 71-863, 71-1053.
District Court of Appeal of Florida, Fourth District.
July 11, 1972.
Rehearing Denied July 31, 1972.
*446 John R. Beranek, of Jones, Paine & Foster, West Palm Beach, for appellants.
Ronald E. Jones, of Cook, Sholts & Jones, West Palm Beach, for appellees.
OWEN, Judge.
The primary issue we consider in this case is whether the court erred in denying to appellants, who were two of the four defendants in this personal injury action, pretrial discovery of a so-called "Mary Carter Agreement"[1] between the plaintiffs and the other two defendants. If so, we have the corollary question of whether such error was sufficiently prejudicial to appellants in the presentation of evidence and in the closing argument before the jury as to require that we set aside the judgment for plaintiffs and award appellants a new trial.
The facts giving rise to the litigation can be stated rather briefly. Plaintiff Joan Rountree, driving her car easterly on 45th Street in the City of West Palm Beach, encountered what she described as a torrential downpour as she neared the intersection of Congress Avenue, and because of limited visibility she slowed to approximately 5 miles per hour. At that time a vehicle northbound on Congress Avenue, operated by Forbes Wood and owned by Willie Walker, III, entered the intersection without stopping at the posted "Stop" sign, and was struck on the left side by Mrs. Rountree's car. The two cars, while still engaged, slid into the westbound lane of 45th Street, where seconds later they were struck by a westbound cement truck owned by appellant Maule Industries, Inc. and operated by appellant Dunlap. Mrs. Rountree sustained serious and permanent injuries, the nature of which we need not detail other than to note that none of the defendants have sought to attack the $300,000 verdict as being excessive.
Mrs. Rountree and her husband filed this suit in October, 1970, naming Wood, Walker and the appellants as defendants. Less than two months later a written agreement was entered into between counsel for plaintiffs and counsel for defendants Wood and Walker. Patterned somewhat along the *447 lines of the agreement involved in the case of Booth v. Mary Carter Paint Co., Fla. App. 1967, 202 So.2d 8, it provided that Wood and Walker would continue in active defense of the litigation, but that their financial responsibility would be limited in accordance with the agreement. In this regard, it provided in substance that if the verdict were to be returned against them solely, they could satisfy the judgment entered thereon by paying the plaintiffs $10,435.00, plus taxable costs, but that if the verdict were returned against all of the defendants no contribution whatever would be required from Wood and Walker, or their insurance carrier, and the plaintiffs would look solely to the appellants for satisfaction of judgment entered on that verdict. As in the Booth case, the agreement further provided that it was designed only to limit financial responsibility and was neither an admission of liability nor of the extent of damages, and further, that the contents would not be divulged except upon court order.
Despite the requirement of secrecy, appellants' counsel either became aware of the agreement or strongly suspected its existence, because in April, 1971 (some five months before the scheduled trial), appellants filed a motion for an order requiring the plaintiffs or their counsel to produce a copy of the agreement. The denial of that motion has been assigned as the error by which this issue is presented to us.[2]
Although the narrow issue presented is whether appellants were entitled to pre-trial discovery of the agreement, and if so, whether denial was prejudicial to their case, the initial thrust of appellants' argument is much broader. They asked us to take a fresh look at the so-called "Mary Carter Agreements" and hold them to be void as against public policy, citing as authority the well-reasoned decision of the Supreme Court of Nevada in the case of Lum v. Stinnett, Nev. 1971, 488 P.2d 347. We are not inclined to paint with a brush that broad. Obviously, the number of variations of the so-called "Mary Carter Agreement" is limited only by the ingenuity of counsel and the willingness of the parties to sign, and we therefore feel that we can neither condone nor condemn such agreements generically. We simply say that we do not find the agreement in this case to be void.
Confining ourselves to the issue as presented to us we hold that the court erred in denying appellants' pretrial motion for an order requiring production of the agreement, but that such error did not so prejudicially affect appellants either in the presentation of evidence or in the closing arguments before the jury as to require that the judgment be set aside.
There are two reasons why agreements of this type are a proper subject for pretrial discovery. First, there is the possibility that the agreement would be of such a nature as would sustain the nonsigning defendant's entitlement to a setoff under F.S. Section 768.041, F.S.A. While this would depend upon the form and content of the particular agreement[3], such *448 defendant should have the opportunity to have the information prior to trial so that if setoff is appropriate under the statute, the necessary information may be brought to the court's attention at the time of trial. Second, the moving party is entitled to have the agreement available for use in evidence to the extent that it is relevant to any of the matters in issue. One of the criteria for judging the credibility of a witness's testimony is his interest in the outcome of the trial. We are of the view that when some of the defendants in a personal injury action have entered into a written agreement with the plaintiffs whereby the signing defendants are assured of immunization from the judgment should the verdict either be against all defendants (as was the case here) or exceed an agreed sum, (which, while not the case here, is a common arrangement in agreements of this type), evidence of such agreement would be a proper consideration for the jury in evaluating the credibility of the testimony of a party to the agreement. A contrary view appears to have been reached by the Second District Court of Appeal in the case of Bill Currie Ford, Inc. v. Cash, Fla.App. 1971, 252 So.2d 407.
Appellants' contention that the error prejudicially affected them in the presentation of evidence and in closing arguments before the jury is clearly refuted by the record. Their claim to being hampered in presentation of evidence arose out of the following single incident: Appellants' counsel called co-defendant Walker as a witness (but failed to designate him as an adverse party under Rule 1.450(a), RCP, 30 F.S.A.) and thereafter sought to impeach Walker on the basis of a prior inconsistent statement. An objection to this procedure was sustained by the court. Appellants now argue that if the agreement had been available to them, they could have established to the court's satisfaction that Walker's interest was adverse to theirs, and having done so, the court would then have declared Walker as an adverse party and permitted appellants to proceed with the impeachment. Completely overlooked in this argument is the fact that after further colloquy between counsel and the court, appellants' counsel was permitted to obtain from Walker an admission of the prior inconsistent statement. Parenthetically, it is noted that appellants do not suggest that evidence of the agreement would have aided their cause by affecting the credibility of either Wood or Walker (each of whom testified) and indeed they cannot suggest such in good faith, for neither Wood nor Walker saw appellants' cement truck before the collision, and neither testified to anything which possibly could have placed any blame or fault on appellants. Appellants' claim that they were prejudiced in closing argument to the jury is in reference to the argument made by counsel for co-defendants Wood and Walker, who candidly admitted that his clients were partly responsible for the plaintiffs' damages and then devoted the major portion of his summation to showing that appellants were likewise partly responsible. In view of the clear liability of Wood and Walker, the only logical tactic available to their defense counsel was to argue that the blame should be shared by the other defendants as well. It would be pure speculation on our part to conclude that had the jury been aware of the agreement it not only would have rejected this argument but also would have returned a verdict exonerating appellants from liability. If we were called upon to speculate, it seems more likely that knowledge of the agreement would tend to make the jury hold appellants jointly liable in view of the extent and severity of plaintiffs' damages.
Appellants have raised as an additional point on appeal the denial of their motion for a directed verdict made at the close of all of the evidence. While the evidence against them may not be overwhelming, there is sufficient basis in the evidence for the jury to conclude that appellants' ten-wheel, 16-ton cement truck was operating too fast for the conditions then existing and that had it been operated *449 at a slower speed it could have been stopped in time to avoid striking the vehicles which had moved into its lane of traffic. While the trier of fact would not have been required to draw such a conclusion, it was an inference which could reasonably be drawn from the evidence and hence the court properly permitted the case to go to the jury.
The final judgment in Case No. 71-863, and the cost judgment which is the subject of Case No. 71-1053, are severally affirmed.
REED, C.J., and WALDEN, J., concur.
NOTES
[1] The term arises from the agreement popularized by the case of Booth v. Mary Carter Paint Co., Fla.App. 1967, 202 So.2d 8, and now appears to be used rather generally to apply to any agreement between the plaintiff and some (but less than all) defendants whereby the parties place limitations on the financial responsibility of the agreeing defendants, the amount of which is variable and usually in some inverse ratio to the amount of recovery which the plaintiff is able to make against the nonagreeing defendant or defendants.
[2] After the case went to trial before a jury resulting in a verdict against all defendants, appellants' post trial motions included a renewal of the motion to produce in response to which the plaintiffs voluntarily produced a copy of the agreement which appellants have placed in the record.
[3] The agreement involved in the case of Booth v. Mary Carter Paint Co., Fla. App. 1967, 202 So.2d 8 was held not to be a release or covenant not to sue within the provisions of F.S. Section 768.041, F.S.A., a view which we followed in the case of Schwencke v. Brown, Fla.App. 1970, 232 So.2d 193 involving an agreement identical in form to that in the Booth case. However, in other cases where the agreements were worded differently, and it was determined that the money had been paid, such agreements were found to have the effect of being a release or covenant not to sue so as to justify a setoff under the statute. See Leaseco, Inc. v. Bartlett, Fla.App. 1971, 257 So.2d 629 and Thomas Air Conditioning and Refrigeration Co. v. Bankston, Fla.App. 1970, 231 So.2d 272.