355 So.2d 208 (1978)
FRIER's, INC. and Hartford Accident and Indemnity Company, Appellants,
v.
SEABOARD COASTLINE RAILROAD COMPANY and Billy Jean Parker, Appellees.
No. CC-464.
District Court of Appeal of Florida, First District.
February 22, 1978.
Rehearing Denied March 14, 1978.
*209 Richard T. Jones of Jones & Ritch, Gainesville, for appellants.
John R. Young, Delray Beach, E.A. Sellers, Live Oak, Robert O. Stripling, Jr., Gainesville, William R. Swain and Douglass E. Myers, Jr., of Webb, Swain & Watson, Jacksonville, for appellees.
MILLS, Judge.
This action arose from an automobile-train collision in which a passenger in the car was killed. The automobile was owned by Frier's Inc. (Frier's) and insured by Hartford Accident and Indemnity Company (Hartford). Seaboard Coastline Railway Company (Seaboard) owned the train. A wrongful death action was brought by Billie Jean Parker (Parker), mother of the deceased, against Frier's, Hartford and Seaboard. Prior to trial, Parker entered into a "Mary Carter" agreement with Frier's and Hartford. The agreement provided that: (a) if Parker received a judgment in excess of $85,000 against all defendants, she would pursue satisfaction of the judgment only against Seaboard and not against Frier's and Hartford; (b) if Parker received a judgment of less than $85,000 against all the defendants, she would pursue satisfaction against Seaboard, and Frier's and Hartford would pay the difference between the amount collected from Seaboard and $85,000; (c) if Parker received a judgment in any amount against Frier's and Hartford only, Frier's and Hartford would pay Parker $85,000; (d) if Parker did not receive a judgment against any of the defendants, Frier's and Hartford would pay $85,000. After trial, final judgment was entered against Frier's, Hartford and Seaboard in *210 the amount of $150,000. Seaboard filed a post-trial motion for contribution from Frier's and Hartford and attached to the motion the agreement entered into by Frier's, Hartford and Parker. The motion alleged that the agreement was not based upon any consideration and "... attempts to abrogate the provisions of Florida Statute 768.31 ..." The trial court granted Seaboard's motion for contribution and ordered that Frier's and Hartford pay Seaboard $75,000, plus one-half the costs and interest.
Frier's and Hartford contend that the trial court erred in failing to apply Section 768.31(5)(b) and ordering contribution. Subsection 768.31(5) of Florida's Uniform Contribution Among Tortfeasors Act reads as follows:
"(5) Release or covenant not to sue.  When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of consideration paid for it, whichever is the greater; and,
(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."
Agreements of the general type entered into by Frier's, Hartford and Parker are known loosely as Mary Carter agreements, receiving their name and judicial recognition in the case of Booth v. Mary Carter Paint Co., 202 So.2d 8 (Fla. 2d DCA 1967).
A Mary Carter agreement is an agreement entered into between a plaintiff and one or more but not all defendants which typically has the following features:
(A) secrecy;
(B) the agreeing defendants remain as party defendants in the lawsuit;
(C) the agreeing defendants' liability is decreased in direct proportion to the nonagreeing defendants' increase in liability;
(D) the agreeing defendant guarantees to the plaintiff a certain amount of money if plaintiff does not receive a judgment against any of the defendants or if the judgment is less than a specified sum.
See Ward v. Ochoa, 284 So.2d 385 (Fla. 1973); Booth v. Mary Carter Paint Co., supra. Mary Carter agreements are valid in Florida, Weinstein v. National Car Rentals, 288 So.2d 509 (Fla. 2d DCA 1974); however, the courts have not overlooked the fact that such agreements can be extremely prejudicial to the nonagreeing defendant and have attempted to mitigate the harmful effects by permitting pretrial discovery of the agreement and by holding that the agreements are admissible into evidence. Ward v. Ochoa, supra; Maule Industries, Inc. v. Roundtree, 284 So.2d 389 (Fla. 1973).
The agreement between Parker, Frier's and Hartford is obviously a Mary Carter agreement. It is also a covenant not to enforce judgment. Section 768.31(5)(b) clearly states that when a covenant not to enforce judgment is given in good faith, "... [i]t discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor." Under this provision a tortfeasor is not discharged from liability for contribution merely because he has been given a release or covenant not to enforce judgment. The covenant must have been given in good faith.
In determining whether a covenant has been given in good faith, the Act within which the term is found must be considered. The purpose of the Act is to distribute the burden of responsibility equitably among those who are jointly liable to an injured party. Commissioners' Prefatory Note (1955 Revision), Uniform Contribution Among Tortfeasors Act, 12 U.L.A. 59 (1975). At the same time, the Act encourages settlements. Commissioners' Comment, § 4, 12 U.L.A. 99 (1975).
The 1939 Act promoted equitable sharing to the extent of providing that a release did *211 not discharge the tortfeasor to whom it was given from contribution, unless the release provided for a reduction, to the extent of a pro rata share, of the injured person's damages recoverable against the other tortfeasors.
"The idea underlying the 1939 provision was that the plaintiff should not be permitted to release one tortfeasor from his fair share of liability and mulct another instead, from motives of sympathy or spite, or because it might be easier to collect from one than the other; and that the release from contribution affords too much opportunity for collusion between the plaintiff and the released tortfeasor against the one not released." Commissioners' Comment, § 4, supra.
It was soon discovered that although the 1939 Act promoted equitable sharing, it made it almost impossible for a tortfeasor to settle. Thus, the Act was revised in 1955, settlements were encouraged, and the good faith standard for settlement added.
In River Garden Farms, Inc. v. Superior Court for County of Yolo, 26 Cal. App.3d 986, 103 Cal. Rptr. 498 (Cal.3d DCA 1972), the court considered at length the implication of the good faith clause and found that the good faith standard provided the balance between the possibly conflicting goals of final settlement and equitable sharing.
"... [A] plaintiff armed with a strong and lucrative claim, ... [could] settle with his antagonists one by one, preserving for the jury the opponent with the most money and least sympathy. The power is great and vulnerable to abuse. In a multi-party case the threat of an unshared judgment against the last remaining defendant  diminished only by meager settlements with his eager fellows  permits a plaintiff to create acute financial pressures bordering on extortion. Viewed as a demand for settlements which have a reasonable relation to the value of the plaintiff's case, to the strengths and weaknesses of the parties and the financial ability of the settlor, the good faith clause aids the statutory goal of equitable sharing. It also aids the goal of settlement, by preventing a plaintiff from selecting one defendant as a target for enlarged demands after unreasonably low settlements with others." 103 Cal. Rptr. at 503, 504.
The Commissioners' Comment to the 1955 revision notes that the good faith requirement allows the court "... to determine whether the transaction was collusive, and if so there is no discharge."
"The notion of collusion advanced by the Uniform Law Commissioners implies something more than confederacy. Any negotiated settlement involves cooperation, but not necessarily collusion. It becomes collusive when it is aimed to injure the interests of an absent tortfeasor." River Garden Farms, Inc. v. Superior Court for County of Yolo, supra, at 505.
Because of the nature of a Mary Carter agreement, some commentators have questioned whether such an agreement could ever be considered to have been given in good faith. See, Note, The Mary Carter Agreement  Solving the Problems of Collusive Settlements in Joint Tort Actions, 47 S.Cal.L.Rev. 1393, 1407 (1974); Freedman, The Expected Demise of "Mary Carter": She Never Was Well! 633 Ins.L.J. 602, 219 (Oct. 1975). However, we are not prepared to say that all Mary Carter agreements lack the essential good faith element. The question of whether a Mary Carter agreement, or any other agreement, has been made in good faith, must be raised in the trial court and a determination made based on the circumstances of that particular case.
In the case before us, Seaboard moved for contribution and attached the agreement between Parker, Frier's and Hartford but did not specifically allege that the agreement was not entered into in good faith. In its order, the trial court found that the agreement had been entered into, but did not make a finding as to good faith. Further, we have not been furnished with a transcript of the proceedings in the trial court. Thus, from the record before us, we are unable to determine whether the question of good faith was at issue below.
*212 Under the circumstances, this case is reversed and remanded to the trial court with instructions that Seaboard be permitted to amend its motion for contribution and that an evidentiary hearing be held on the issue of good faith.
BOYER, Acting C.J., and ERWIN, J., concur.