Michael Paul COX, Appellee,

v.

KELSEY–HAYES COMPANY, a corporation, and Carl-Built, Inc., a corporation, Appellants,

(Leslie Scott II, Non-Appealing Defendant.)

No. 49317.

Supreme Court of Oklahoma.

Nov. 7, 1978.

Rehearing Denied May 7, 1979.

Hunt, Thomas, Dawson & Gile by Jake Hunt, Hastie & Kirschner by George W. Dahnke, Oklahoma City, for appellee.

Wm. G. Smith and Edward L. Ray of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for appellants.

DOOLIN, Justice:

This is an appeal by two defendants from a jury verdict in a tort action based on manufacturers' products liability and negligence. A single issue is dispositive of the appeal and because we reverse on this question we will not consider other errors submitted by appellants.

Plaintiff was driving a hay truck on highway 270 toward Watonga. Defendant Scott's vehicle approached him from the other direction pulling a horse-trailer. As the vehicles neared each other on the two lane road a wheel came off the horse-trailer and rolled across the highway in front of plaintiff. He lost control of the truck, went down an embankment and was injured, ultimately losing a leg.

Plaintiff brought suit against Scott, Kelsey-Hayes who allegedly manufactured the axle assembly of the trailer and Carl-Built, Inc., the distributer. He claimed loss of the wheel from the trailer was due to improper assembly by Scott and defective manufacture of the lug bolts on the hub. Plaintiff dismissed his initial suit without prejudice during trial but later refiled. Prior to refiling he entered into the following agreement with defendant Scott and his insurance carrier:

## LIMITATION OF EXECUTION AGREEMENT

"Whereas the undersigned, plaintiff, (Michael Paul Cox) in the event of a judgment in his favor, has an unlimited right of election as to levy of execution against the defendants determined to be jointly and severally liable for the plaintiff's damages; and,

Whereas there is more than one defendant, against whom such election might be made in the case styled Michael Paul Cox, plaintiff, versus Kelsey-Hayes Company, a Delaware corporation, Carl-Built, Inc., an Oklahoma corporation, and Leslie Scott, II, defendants, No. CJ–73–691, in the District Court of Oklahoma County, Oklahoma; and,

Whereas defendant, Leslie Scott, II, is one of the described defendants potentially exposed to levy of execution; and, Whereas it is desirable for the plaintiff to receive immediate compensation for the limitation of his unlimited right of election as to levy of execution of any judgment that may be rendered in his behalf; and,

Whereas it is equally desirable for the defendant, Leslie Scott, II, to liquidate his potential exposure to such levy of execution by plaintiff's unlimited election;

Now, therefore the plaintiff, Michael Paul Cox, and the defendant, Leslie Scott, II, agree that:

A. Defendant Leslie Scott, II, through his insurance carrier, Oklahoma Farm Bureau Mutual Insurance Company will pay the sum of Ninety Thousand Dollars ($90,000.00) to plaintiff upon execution of this agreement;

B. Plaintiff will limit his right of election as to levy of execution as follows:

1. In the event of a judgment in favor of the plaintiff and against the defendant, Leslie Scott, II, only, and not against any other defendant, plaintiff will execute and deliver to defendant a release and discharge of such judgment upon the payment to him, by Leslie Scott, II, or his insurance carrier, Oklahoma Farm Bureau Mutual Insurance Company, of the sum of Ten Thousand Dollars ($10,000.00), and plaintiff will not proceed against the defendant, Leslie Scott, II, or Oklahoma Farm Bureau Mutual Insurance Company for any sum or amount in excess of Ten Thousand Dollars ($10,000.00) regardless of the amount of judgment entered, interest accrued or expenses incurred.

2. In the event of a judgment in favor of the plaintiff and against the defendant, Leslie Scott, II, and *one or more of the other defendants*, the plaintiff will use his best efforts to collect all of said judgment from the other said defendant or defendants. If the amount collected by the plaintiff from the other defendants equals or exceeds Two Hundred Fifty Thousand Dollars ($250,000.00), plaintiff will reimburse defendant or his insurance carrier, Oklahoma Farm Bureau Mutual Insurance Company, in the amount of Forty Thousand Dollars ($40,000.00); and, in addition to such Forty Thousand Dollars ($40,000.00), plaintiff will reimburse defendant and his insurance carrier on the basis of twenty percent (20%) of any excess amount recovered over Two Hundred Fifty Thousand Dollars ($250,000.00) collected by the plaintiff from the other defendants but not to exceed the amount of Fifty Thousand Dollars over and above the original Forty Thousand Dollars ($40,000.00)."

Under this agreement Scott would remain as a defendant although he and his insurer had conditionally settled with plaintiff prior to trial. Further Scott and his insurer could receive a rebate in proportion to the size of the verdict in plaintiff's favor against the non-agreeing defendants Kelsey-Hayes and Carl-Built, appellants herein.

Appellants became aware of this agreement through answers to interrogatories. Following discovery appellants filed motions to dismiss and to realign the parties, and amendments to their original answers, claiming the agreement resulted in a defect in parties and was a fraud and sham on the court. The trial court overruled appellants' motions and further refused to allow appellants to cross examine regarding the agreement or introduce it into evidence. The court also refused to permit any impeachment questions of Scott as to his financial interest in a verdict against appellants. The jury returned a verdict in plaintiff's favor against all three defendants for $1,800,000.00. The trial court overruled appellants' motions for new trial or judgment n. o. v., denied a remittitur and refused to credit the $90,000.00, previously paid to plaintiff by Scott, against the joint judgment. This appeal resulted. Scott of course does not appeal as he benefited from the verdict.

Appellants submit numerous allegations of error concerning this pre-trial agreement, basically arguing they did not receive a fair trial because Scott was no longer an adversary defendant. They argue the trial court erred in refusing to allow the jury to consider the agreement and the effect it had on Scott's testimony.

The pre-trial agreement is in the nature of an aleatory contract, execution of which depends on the contingency of the jury verdict. This type of agreement was judicially spawned in *Booth v. Mary Carter Paint Company, 202 So.2d 8 (Fla.App.1967).* In that case a jury trial resulted in a $15,000.00 verdict in favor of the plaintiff. After trial it was revealed one of the defendants had contracted with plaintiff, in essence, if the verdict was for more than $37,500.00, plaintiff would execute only against Mary Carter Paint Company, and under no circumstances would the contracting defendant be liable for more than $12,500. The contract further provided contracting defendant would continue to defend and the agreement should be kept secret and not revealed to the jury. The appellate court apparently sanctioned the agreement as the trial court was upheld.

In 1973, the Florida Supreme Court, although ostensibly overruling the *Mary Carter* decision, found this type of settlement agreement was valid. The court in *Ward v. Ochoa, 284 So.2d 385 (Fla.1973)* required full disclosure and vacated a Court of Appeals decision that held a set-off of amount paid to agreeing defendant against total award cured any possible injustice created by the contract.

The Florida Court in *Ward* coined the name "Mary Carter Agreement" defining it as a contract by which one co-defendant secretly agrees with the plaintiff that if that defendant will continue as an active defendant in the suit, his own maximum liability will be diminished proportionately by increasing the liability of the non-agreeing defendants.

Florida courts, since the *Mary Carter* decision, while admonishing that these agreements have potential for extreme prejudice against non-agreeing defendants have continually and cautiously upheld them provided any harm must be mitigated by full disclosure. Further if the agreeing defendant will have his maximum liability reduced by increasing the liability of a co-defendant, these courts have held the agreement should be admitted into evidence.[1]

Obviously the number of variations upon such agreements is limited only by the ingenuity of the mind of man.[2] A typical Mary Carter agreement usually has the following features:

A.  secrecy
B.  contracting defendant remains in the lawsuit
C.  contracting defendant guarantees plaintiff a certain monetary recovery
D.  contracting defendant's liability is decreased in direct proportion to the increase in the non-agreeing defendants' liability.

It is the last element that is unique to the "Mary Carter" agreement and creates the most unfair prejudice to the non-agreeing defendant and his right to a fair trial.[3] Plaintiff is guaranteed a certain amount from one defendant regardless of the outcome of the verdict. In return that defendant receives the right to benefit from any joint verdict, or a verdict solely against the non-agreeing defendants. The agreeing defendant therefore partakes of direct inter-

1.  *Maule Industries, Inc. v. Rountree,* 264 So.2d 445 (Fla.App.1972), remanded on other grounds, 284 So.2d 389 (Fla.1973); *Ward v. Ochoa,* 284 So.2d 385 (Fla.1973); *Swanson v. State Farm Fire & Casualty Co.,* 349 So.2d 202 (Fla.App.1977) which held it was error to admit the agreement in a modified form; *Friers, Inc. v. Seaboard Coastline R. Co.,* 355 So.2d 208 (Fla.App.1978).

2.  *Maule Industries, Inc. v. Rountree,* supra, n. 1.

3.  Mary Carter agreements are similar to "loan-receipt agreements" and "covenants not to execute", but contain potentially prejudicial elements not usually found in these agreements. These two alternatives to the Mary Carter agreement require special analysis and are not discussed in this decision.

est in the outcome of the litigation. The normal adversary relationship between plaintiff and defendant becomes distorted, if not destroyed.

█ Ordinarily settlement agreements between plaintiff and a defendant should be excluded from the jury, otherwise the policy favoring settlement of lawsuits would be frustrated.[4] But "Mary Carter" type agreements cannot really be classified as settlements because the controversy is only contingently settled. The agreeing defendant remains a party, and the jury still determines the extent of his liability but in an inverse ratio to the liability imposed on the non-agreeing defendant.

Jurisdictions vary in their approach to this type of agreement. Arizona upheld such an agreement where the terms were fully disclosed to the court and the appealing defendant failed to take advantage of an opportunity to reveal the terms of the agreement to the jury by cross-examination of the agreeing defendant. See *City of Tucson v. Gallagher, 108 Ariz. 140, 493 P.2d 1197, 65 A.L.R.3d 597 (1972)*. Unlike the present case, there was no issue raised on appeal regarding the refusal of the trial court to allow testimony regarding the agreement.

Similarly other courts, while guardedly accepting Mary Carter type agreements, choose to treat them on a case to case basis rather than by categorical condemnation or absolute approval.

In *Pacific Indemnity Company v. Thompson, Yaeger, Inc., 260 N.W.2d 548 (Minn. 1977)* the Minnesota court upheld such an agreement because its terms were read into the record and the effect of the agreement was argued to the jury.

The court in *Burkett v. Crulo Trucking Company, 355 N.E.2d 253 (Ind.App.1976)* purposely "fired a shot across the bow" to discourage misuses of such agreements, suggesting courts and counsel exercise scrutiny and restraint to insure that a non-par-

ticipating co-defendant is not deprived of a fair trial.

The Texas Supreme Court recently reversed a plaintiff's verdict where he had entered into a "Mary Carter" type agreement with one defendant. The court held defendant's financial interest, derived from the agreement, was a proper subject for cross-examination and proof. Exclusion of such evidence was harmful error requiring reversal, even though the alignment of adversaries was disclosed. *General Motors Corporation v. Simmons, 558 S.W.2d 855 (Tex.1977)*.

In *Breitkreutz v. Baker, 514 P.2d 17 (Alaska 1973)* the trial court limited the participation of the agreeing defendant and informed the jury of the settlement. The Alaska Supreme Court held the trial court was correct, questioning the propriety of even allowing agreeing defendant to remain as a nominal defendant. It stated if trial court had not informed the jury of the settlement terms it would have been error.

Several courts hold Mary Carter type agreements are admissible primarily for the purpose of impeaching the testimony of the agreeing party; to show bias or prejudice by revealing that the agreeing party stands to gain financially from a plaintiff's verdict. See *Reese v. Chicago, Burlington & Quincy R.R. Company, 55 Ill.2d 356, 303 N.E.2d 382 (1973); Bedford School District v. Caron Construction Company, 367 A.2d 1051 (N.H. 1976)*.

Nevada held a Mary Carter type of agreement, also involving an insurer, was void as against public policy, champertous and violative of legal ethics. In *Lum v. Stinnett, 87 Nev. 402, 488 P.2d 347 (1971)*, the trial court denied appellant's request to call a witness to testify to the terms of the agreement. The Supreme Court reversed the plaintiff's verdict, holding the agreement deprived the trial of its proper adversary character, thus appellants were denied a fair trial because irregularities so warped presentation of the case. The court distin-

---

4. *General Motors Corp. v. Simmons, 558 S.W.2d 855 (Tex.1977); Gibson v. Chickasha Cotton Oil Co., 159 Okl. 291, 15 P.2d 41 (1932);*

*Great American Life Ins. Co. v. Stephenson, 176 Okl. 295, 55 P.2d 56 (1936).*

guished the case of *Klotz v. Lee, 36 N.J.Super. 6, 114 A.2d 746 (1955)* on which Scott relies heavily in the present case.

In *Klotz* nothing was paid to plaintiff prior to trial. A cross-claim remained between defendants. Also the agreeing defendant was compelled to pay half of any judgment against both defendants. Therefore no legal benefit to agreeing defendant or his insurance company would exist from a large plaintiff's judgment.

Courts and commentators, recognizing the substantial prejudice to the non-agreeing defendants, are nearly unanimous in their belief the agreements must be disclosed prior to trial and *if the agreeing defendant's maximum liability will be reduced by increasing the liability of his codefendant, the jury must be informed of the contents of the agreement*, even if not the exact monetary provisions. See *Bedford School District v. Caron Construction Co., supra; Anderson v. Kemp, 184 So.2d 832 (Ala.1966); Degen v. Bayman, 200 N.W.2d 134 (S.D.1972); Grillo v. Burke's Paint Company, Inc., 551 P.2d 449 (Or. 1976); Sequoia Mfg. Company, Inc. v. Hale Construction Company, 570 P.2d 782 (Ariz. App.1977).*

■ In Oklahoma cross-examination of a witness as to settlement with an insurer is permitted. Settlement of a claim against an opposing party is proper evidence to show bias or prejudice of a witness. Refusal to allow any cross-examination upon matters tending to affect credibility of a witness is error even though it incidentally would disclose defendant is protected by insurance. See *Frierson v. Hines, 426 P.2d 362 (Okl.1967).*

■ In the present case plaintiff insists any bias was cured because the jury was indeed informed of the settlement. However the record indicates only that the jury was told Scott "had partially settled" with plaintiff. This is not sufficient to overcome the prejudicial nature of the agreement.

As previously noted jurisdictions accepting such agreements are generally in accord if the agreeing defendant will profit by a larger award to the plaintiff, the jury must be informed of the contents of the agreement, even if not the exact monetary provisions. These agreements might also be considered violative of public policy because the burden of the loss shifts to the less blameworthy defendant in that the agreeing defendant will usually be willing to offer more to the plaintiff under such an agreement and thus escape responsibility for his proportionate share of damages or hopefully escape liability altogether.[5]

We certainly do not frown on all pre-trial settlement agreements. Neither do we imply there was any fraud present in this case. The agreement was known to appellants and the court. But there was no way Scott could escape liability except by a large award in favor of plaintiff. This alienated Scott with plaintiff—not with defendants, and as suggested in *Lum v. Stinnett, supra*, deprived the trial of its true adversary character.

■ If a pre-trial agreement has settled the suit completely between plaintiff and one defendant, then that defendant should be dismissed as being unnecessary to disposition of the case.

■ If the agreement does not absolutely settle the conflict, but rather hinges on the amount of the verdict, the trial court should review the circumstances of the agreement and *either hold that portion of the agreement granting agreeing defendant an interest in a large plaintiff's verdict unenforceable as against public policy, or dismiss the agreeing defendant from the suit.* In no circumstances should a defendant who will profit from a large plaintiff's verdict be allowed to remain in the suit as an ostensible defendant. If agreeing defendant is dismissed, cross-examination affecting his interest and credibility should protect the interest of non-agreeing defendant. If agreeing defendant remains in the suit and the agreement has been declared void as against public policy, then the adversary

---

**5.** See annotation at 65 A.L.R.3d 602, 608.

nature of the proceedings has been preserved and the agreement is no longer relevant.

In most cases full disclosure to the jury of the exact terms of the agreement is probably inadvisable. Full disclosure could in some cases be detrimental to the non-agreeing defendant who would be torn between need to inform the jury of the agreement and the potentially self-serving statements of plaintiff and agreeing defendant contained therein.[6]

We do not here outlaw all pre-trial agreements or settlements between plaintiff and one or more defendants. A defendant's attorney certainly should be entitled to contract for a settlement most advantageous to his client. But the agreement should not affect the rights of non-parties to the agreement, by shifting one defendant's liability to the other.

■ We hold any agreement wherein one defendant will directly benefit from a joint award to be void and unenforceable as against public policy *if agreeing defendant remains in the lawsuit.*

■ We further hold any pre-trial agreement between plaintiff and a defendant must be revealed to all parties and the court prior to trial and to the jury in some appropriate degree to be decided by the trial court.[7]

We do not comment on the effect the recently enacted legislation providing for contribution among tort-feasors will have on such agreements. See Oklahoma Session Laws 1978 c. 78, p. 142. We save that for another day.

Trial court erred in allowing Scott to remain as a defendant in the lawsuit and in denying appellant's attempts to admit the agreement into evidence.

REVERSED AND REMANDED FOR A NEW TRIAL.

WILLIAMS, BERRY, BARNES, and SIMMS, JJ., concur.

LAVENDER, V. C. J., concurs specially.

IRWIN, J., dissents.

LAVENDER, Vice Chief Justice, concurring specially:

I concur that appellant is entitled to a new trial. In my view the "Mary Carter Agreement," insofar as it (1) agrees that Scott shall remain in the action as a party defendant, and (2) provides that the agreement between Scott and the plaintiff shall remain a secret one, is not binding on the trial court because it is collusive and for the obvious purpose of permitting plaintiff to obtain testimony and other assistance from Scott during the trial of the matter which would not otherwise be available. To this extent the adversary nature of the matter has been compromised. Because Scott has no further interest in defending against the claims of the plaintiff, I would hold the trial court should dismiss him from the case as a defendant. Because, by the terms of the agreement, Scott stands to benefit in the event of a large plaintiff's verdict against the appellants, such fact should be revealed to the jury, if Scott testifies, so that the jury, in considering Scott's testimony, may weigh his bias and interest. *Breitkreutz v. Baker,* cited in the majority opinion. See also dissenting opinion by Traynor, J. in *Pellett v. Sonotone Corporation, 26 Cal.2d 705, 160 P.2d 783 (1945)* wherein the "real significance" of an agreement which requires the settling defendant to remain as a party defendant is discussed.

---

**6.** See *Lum v. Stinnett,* 488 P.2d 347, 352, 353 (Nev.1971).

**7.** Two excellent notes on this issue and such agreements in general may be found at 47 So. Cal.L.R. 1393 (1974) *The Mary Carter Agree-* *ment—Solving the Problems of Collusive Settlements in Joint Tort Actions;* and Freedman, *The Expected Demise of "Mary Carter": She Never Was Well!,* 633 Ins.L.J. 602 (1975).