846 F.2d 637
 Charles L. "Chuck" HOOPS, Kathy Hoops, and Travelers
Insurance Company, Plaintiffs,
v.
WATERMELON CITY TRUCKING, INC., and James Archie Hayes,
Defendants/Cross-Claimants/Appellants,
v.
LEEWAY MOTOR FREIGHT, INC., Defendant/Cross-Claimant/Appellee.
 No. 85-2790.
 United States Court of Appeals,
Tenth Circuit.
 May 18, 1988.
 
 Harry R. Palmer, Jr., Oklahoma City, Okl., for defendants/cross-claimants/appellants.
 Larry D. Ottaway and Timothy M. Melton, Foliart, Huff, Ottaway & Caldwell, Oklahoma City, Okl., for defendant/cross-claimant/appellee.
 Before LOGAN, ANDERSON and TACHA, Circuit Judges.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 Charles Hoops was seriously injured in an automobile accident involving trucks owned by Watermelon City Trucking, Inc. ("WCT") and Leeway Motor Freight, Inc. ("Leeway"). Hoops and his wife Kathy (individually or collectively "Hoops") brought this diversity action against James Archie Hayes, the driver of the WCT truck, and both trucking companies in the federal district court for the Western District of Oklahoma. Leeway filed a cross-claim against WCT for damage to the Leeway truck; those damages were stipulated at $10,000. After a jury trial, the jury apportioned one hundred percent of the fault for the accident to WCT and awarded actual damages to Hoops in the amount of $3,850,000 and punitive damages of $150,000. Leeway was awarded $10,000 on the cross-claim. After trial, WCT was granted a $1,000,000 remittitur by the district court. Subsequently, Hoops and WCT entered into a settlement and Hoops' action against WCT was dismissed. WCT's motions for judgment NOV or a new trial on the Leeway cross-claim were denied. WCT now appeals the denial of those motions and the judgment for $10,000 in favor of Leeway. We review the district court's action to determine whether the court's refusal to set aside the jury's verdict was an abuse of discretion. See Suggs v. State Farm Fire and Casualty Co., 833 F.2d 883, 887 (10th Cir.1987); Whiteley v. OKC Corp., 719 F.2d 1051, 1058 (10th Cir.1983); Holmes v. Wack, 464 F.2d 86, 89 (10th Cir.1972). Finding no abuse of discretion, we affirm.[1]
 
 
 2
 WCT raises two arguments on appeal. First, WCT argues that the existence of a "High-Low Settlement Agreement" between Hoops and Leeway denied WCT a fair trial. Second, WCT argues that a new trial should be granted due to misconduct by attorneys for Hoops and Leeway. We consider these arguments in turn.
 
 
 3
 Prior to trial, Hoops and Leeway entered into a "Loan Receipt Settlement Agreement." Pursuant to the agreement, Leeway made a $200,000 interest-free loan to Hoops. In exchange, Hoops agreed to limit his potential recovery against Leeway and to repay the loan from monies recovered from WCT. The amount to be repaid increased in relation to the size of the verdict against WCT. In a ruling issued on the opening day of the trial, the district court found this agreement void under Oklahoma law, relying on Cox v. Kelsey-Hayes Co., 594 P.2d 354 (Okla.1978). R.Vol. IV at 14. At that time, counsel for Leeway and Hoops revealed that the parties had also entered into a contingency agreement, to take effect in the event the court invalidated the original agreement. The contingency agreement, a "High-Low Settlement Agreement," provided that Leeway would pay Hoops a minimum of $150,000 even if no verdict was returned against Leeway. It also provided that Leeway's liability to Hoops would be limited to a maximum of $350,000 even if the jury verdict against Leeway was greater than that amount. The contingency agreement also eliminated the payback provisions of the invalidated agreement, so that Leeway had no direct interest in any judgment assessed against WCT. See Id. at 18, 128-131. WCT also objected to the second agreement, moved for a mistrial and asked that Leeway be dismissed from the suit. Those motions were denied. During the trial, the substance of the contingency agreement between Hoops and Leeway was revealed to the jury and was the subject of examination and argument. See R.Vol. IV at 145-48.
 
 
 4
 Thus, the question on appeal is whether the district court properly applied the law of Oklahoma concerning partial settlement agreements in multi-party cases. That law is spelled out in Cox v. Kelsey-Hayes Co. In Cox, the Oklahoma Supreme Court invalidated "Mary Carter" agreements,[2] declaring them "unenforceable as against public policy." Cox, 594 P.2d at 359 (emphasis in original).
 
 According to the Oklahoma court:
 
 5
 "A typical Mary Carter agreement[3] usually has the following features:
 
 A. secrecy
 
 6
 B. contracting defendant remains in the lawsuit
 
 
 7
 C. contracting defendant guarantees plaintiff a certain monetary recovery
 
 
 8
 D. contracting defendant's liability is decreased in direct proportion to the increase in the non-agreeing defendants' liability.
 
 
 9
 It is the last element that is unique to the 'Mary Carter' agreement and creates the most unfair prejudice to the non-agreeing defendant and his right to a fair trial. Plaintiff is guaranteed a certain amount from one defendant regardless of the outcome of the verdict. In return that defendant receives the right to benefit from any joint verdict, or a verdict solely against the non-agreeing defendants. The agreeing defendant therefore partakes of direct interest in the outcome of the litigation. The normal adversary relationship between plaintiff and defendant becomes distorted, if not destroyed."
 
 
 10
 Id. at 357-58 (footnote added; footnote omitted).
 
 
 11
 The Oklahoma court provided detailed instructions for trial courts:
 
 
 12
 If the agreement does not absolutely settle the conflict, but rather hinges on the amount of the verdict, the trial court should review the circumstances of the agreement and either hold that portion of the agreement granting agreeing defendant an interest in a large plaintiff's verdict unenforceable as against public policy, or dismiss the agreeing defendant from the suit. In no circumstances should a defendant who will profit from a large plaintiff's verdict be allowed to remain in the suit as an ostensible defendant.
 
 Id. at 359 (emphasis in original).[4]
 
 13
 WCT argues that the district court should have invalidated the contingency agreement or dismissed Leeway from the suit. We disagree because the essential element of the typical Mary Carter agreement condemned by the Oklahoma court is missing from the contingency agreement; Leeway had no interest in Hoops' verdict against WCT. Leeway's liability to Hoops was not contingent on the size of the verdict against WCT and Leeway did not stand to benefit from a larger verdict against WCT. Accordingly, the contingency agreement between Hoops and Leeway was not proscribed by Cox.[5]
 
 
 14
 WCT also claims it was prejudiced because the existence of the contingency agreement was not revealed until the morning of trial. Cox directs that "any pre-trial agreement between plaintiff and a defendant must be revealed to all parties and the court prior to trial and to the jury in some appropriate degree to be decided by the trial court." Id. at 360 (footnote omitted). WCT was not given the text of the agreement until the end of the first trial day. Nevertheless, the substance of the agreement was "revealed ... prior to trial," and more importantly, WCT had the opportunity to cross-examine Hoops concerning the agreement and to argue the effect of the agreement to the jury. R.Vol. V at 100-103, 113-115, 188. Certainly, the timing could have been more convenient, but we find no violation of Cox and no prejudice to WCT in these circumstances.
 
 
 15
 WCT also urges us to order a new trial based on alleged misconduct by counsel for Hoops and Leeway. Initially, we note that, in this case, the conduct of Hoops' counsel may not be relevant to the claim between WCT and Leeway. Of course, there are circumstances where the misconduct attributable to one party may so taint the trial as to render it prejudicial to all parties involved. That is not the case here. The district court reviewed the improper statements and arguments by Hoops' counsel and concluded that "the verdict [for Hoops] was excessive and resulted, in part, from improper passion and prejudice." R.Vol. I, Tab 187 at 3. Accordingly, the court ordered a remittitur in the amount of $1 million. Obviously, the effects of the improper conduct by Hoops' counsel did not extend to the verdict in favor of Leeway on its cross-claim because the damages were stipulated at $10,000 and no "excessive verdict" was possible.[6] Finally, we agree with the district court's implicit finding that the conduct of Hoops' counsel did not affect the jury's conclusion that WCT was fully liable for the injuries resulting from this accident. Our review of the record shows ample evidence to support that conclusion and it does not appear that the jury's verdict was influenced by those actions. See Fields v. Volkswagen of America, Inc., 555 P.2d 48, 61 (Okla.1976).
 
 
 16
 There remains one allegation of improper cross-examination by Leeway. On cross-examination, Leeway asked Hayes if "WCT would know that you had your license suspended for habitual speeding in Arkansas?" R.Vol. II at 31. WCT immediately objected. The court sustained the objection, admonished the jury, and denied WCT's motion for a mistrial. In Oklahoma, relief from the misconduct of opposing counsel may be appropriate where actual prejudice is shown. See Willis v. Fried, 629 P.2d 1255, 1257 (Okla.1981); Fields, 555 P.2d at 61; Marathon Battery Co. v. Kilpatrick, 418 P.2d 900, 917-18 (Okla.1965); see also Ryder v. City of Topeka, 814 F.2d 1412, 1425 (10th Cir.1987) (party seeking new trial based on misconduct of counsel must show actual prejudice) (applying federal law). "Conduct of counsel ordinarily is not grounds for reversal, unless such conduct substantially influences the verdict or denies the defendant a fair trial." Fields, 555 P.2d at 61. A careful review of the record discloses no adverse influence on the verdict from the conduct of Leeway's counsel. The court promptly admonished the jury, the amount of damages on the Leeway cross-claim was stipulated, and there was ample evidence to support the finding that Hayes and WCT were negligent. Again, we will reverse the district court's decision to deny WCT's motion for a new trial only upon finding of an abuse of discretion. Ryder, 814 F.2d at 1425. We find no abuse of discretion, and therefore the district court's decision is AFFIRMED.
 
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.8. The cause is therefore ordered submitted without oral argument
 
 
 [2]
 These agreements take their name from Booth v. Mary Carter Paint Co., 202 So.2d 8 (Fla.Dist.Ct.App.1967), and the term was later adopted by the Florida Supreme Court in Ward v. Ochoa, 284 So.2d 385, 386 (Fla.1973) and Maule Indus., Inc. v. Rountree, 284 So.2d 389 (Fla.1973). There are dramatic differences in the way courts treat such agreements. See Cox, 594 P.2d at 358-59; see also Wilkins v. P.M.B. Systems Engineering, Inc., 741 F.2d 795, 798 n. 2 (5th Cir.1984); General Motors Corp. v. Lahocki, 286 Md. 714, 410 A.2d 1039, 1046-47 (1980); Lum v. Stinnett, 87 Nev. 402, 488 P.2d 347 (1971); Ward, 284 So.2d at 387; Note, It's a Mistake to Tolerate the Mary Carter Agreement, 87 Colum.L.Rev. 368, 382-85 (1987); Annotation, Validity and Effect of Agreement With One Cotortfeasor Setting His Maximum Liability and Providing for Reduction or Extinguishment Thereof Relative to Recovery Against Nonagreeing Cotortfeasor, 65 A.L.R.3d 602 (1975)
 
 
 [3]
 For other descriptions of "typical Mary Carter agreements," see Wilkins, 741 F.2d at 798 n. 2; Quad/Graphics, Inc. v. Fass, 724 F.2d 1230, 1236 (7th Cir.1983); General Motors Corp., 410 A.2d at 1042; Freedman, The Expected Demise of "Mary Carter": She Never Was Well!, 633 Ins.L.J. 602, 609-10 (1975); Note, It's a Mistake to Tolerate the Mary Carter Agreement, 87 Colum.L.Rev. 368, 369-70 (1987); Note, The Mary Carter Agreement--Solving the Problems of Collusive Settlements in Joint Tort Actions, 47 S.Cal.L.Rev. 1393, 1396-97 (1974). The common element in all of these characterizations is that the settling defendant retains some interest in the plaintiff's verdict against the nonsettling defendants. As the Fifth Circuit has noted, however, "[t]he variety amongst different Mary Carter agreements is limited only by the creativity of defense lawyers." Wilkins, 741 F.2d at 798 n. 2
 
 
 [4]
 In those cases where the pre-trial agreement "has settled the suit completely between plaintiff and one defendant, then that defendant should be dismissed as being unnecessary to disposition of the case." Cox, 594 P.2d at 359
 
 
 [5]
 WCT argues that Cox sweeps more broadly, quoting the court's statement that "any agreement wherein one defendant will directly benefit from a joint award [is] void and unenforceable as against public policy if agreeing defendant remains in the lawsuit." Cox, 594 P.2d at 360 (emphasis in original). We disagree. It is clear from the language quoted earlier that the court in Cox was concerned with those agreements where the agreeing defendant retained an interest in the plaintiff's recovery against the nonsettling defendants. Moreover, in this case, Leeway does not "directly benefit from a joint award," as such a benefit is explained by Cox
 WCT also argues that the agreement changed the adversarial nature of the proceedings, aligning Leeway with the plaintiff, Hoops. To the extent that Leeway and Hoops exhibited a shared interest in proving WCT negligent and liable for the accident, we find that conclusion unremarkable and attributable more to the circumstances of the accident and the framing of the litigation than to the settlement agreement.
 
 
 [6]
 The improper conduct by Hoops' counsel occurred primarily during closing argument and focused on the serious nature of the injuries and WCT's ability to pay damages. These improprieties went to the amount of damages, not WCT's liability