Carrie E. **EVINGER,** Plaintiff–Appellee,

v.

**GREELEY GAS COMPANY,** a Delaware corporation, Defendant–Appellant.

No. 94CA0988.

Colorado Court of Appeals,
Div. I.

June 15, 1995.

Rehearing Denied July 13, 1995.

Keith Killian & Associates, P.C., J. Keith Killian, James P. Guthro, Grand Junction, for plaintiff-appellee.

Kennedy & Christopher, P.C., John R. Mann, Denver, for defendant-appellant.

Opinion by Chief Judge STERNBERG.

The defendant, Greeley Gas Company (GGC), appeals the judgment entered on a jury verdict in favor of the plaintiff, Carrie E. Evinger. We reverse.

Evinger was injured in an automobile accident which occurred when a truck owned by GGC struck the rear of her automobile, which was stopped at an intersection. At the time of the accident, GGC's truck was being operated by its employee within the course and scope of his employment.

Evinger had not obtained personal injury protection (PIP) coverage as required by the Colorado Automobile Accident Reparations Act (No Fault Act), and GGC's vehicle was a "nonprivate passenger vehicle." *See* § 10–4–713(2)(a), C.R.S. (1994 Repl.Vol. 4A).

Evinger sued GGC for damages for the injuries she sustained in the accident. The parties stipulated that the GGC employee would not be personally liable for any damages awarded Evinger; thus, he is not a party to this appeal.

Included among the damages sought were the cost of medical services. Being unable to pay these medical bills, Evinger delivered a promissory note for the amount of each debt to each of the providers of medical services four days before trial. The notes stated that the "principal shall be due and payable on August 15, 1994" and that no interest would accrue unless and until payment was not made by the due date.

The case was tried to a jury, which returned a verdict awarding Evinger $80,000 in damages, but also found her to be 25% at fault. In response to a specific interrogatory, the jury determined that $25,380 of the verdict was for reasonable and necessary medical expenses.

GGC moved for a judgment notwithstanding the verdict, asking the court to offset $50,000 for unpaid PIP benefits from the amount of the jury verdict. The court denied the motion and entered judgment on the verdict in the amount of $60,000. The court later amended the judgment to add $16,509.16 in prejudgment interest, $6,325.30 in costs, and $1,479.97 in actual costs pursuant to § 13–17–202, C.R.S. (1987 Repl.Vol. 6A). This appeal followed.

## I.

The No Fault Act makes it compulsory for every owner of a motor vehicle that is operated on the public highways to obtain a complying policy that includes PIP coverage. *See* § 10–4–701, et seq., C.R.S. (1994 Repl.Vol. 4A). An owner who operates a motor vehicle on the public highways without

having a complying policy faces the following consequences: (a) loss of license under the financial responsibility law, § 42–7–101, et seq., C.R.S. (1993 Repl.Vol. 17); (b) personal liability for the no fault benefits to all persons, including the uninsured driver, who would have had such benefits had the owner been insured, § 10–4–705(1), C.R.S. (1994 Repl.Vol. 4A); (c) loss of all tort immunity, § 10–4–705(1)(b), C.R.S. (1994 Repl.Vol. 4A); (d) ineligibility for no fault benefits if injured; (e) preclusion from filing suits against others until a "threshold" is reached, § 10–4–704, C.R.S. (1994 Repl.Vol. 4A); and (f) liability to being charged with a Class One motor vehicle offense, § 10–4–705, C.R.S. (1994 Repl. Vol. 4A).

Prior to 1979, an uninsured owner motorist was treated as a constructive self-insurer and, as such, if he paid no fault benefits to others or for himself, he had a right of reimbursement of such amounts actually paid against the person at fault. However, by amendment enacted that year, this right of reimbursement was eliminated except in certain limited situations. *See* Colo.Sess.Laws 1979, ch. 75, § 10–4–713 at 389.

Section 10–4–713(2)(a), C.R.S. (1994 Repl. Vol. 4A), however, creates an exception to this rule if the other vehicle involved in the accident is a "nonprivate passenger vehicle." But, this "nonprivate passenger vehicle" exception itself contains an exception which allows a plaintiff that is an uninsured owner to recover only those PIP expenses that were "actually paid."

## II.

■ It is undisputed here that: (a) Evinger did not have PIP coverage; (b) the other vehicle involved in the accident was a "nonprivate passenger vehicle"; and (c), at the time of the trial, Evinger had met her obligation for her medical bills by delivery of promissory notes. Accordingly, in light of the exception to the exception language of the statute, the dispositive issue here becomes whether delivery of promissory notes by Evinger to her health care providers constitutes "actual payment," as that term is used in § 10–4–713(2)(a). The trial court ruled that, by delivery of these notes, Eving-

er had "actually paid" these expenses. We conclude the trial court erred in so ruling.

The parties do not dispute that: (1) because Evinger's vehicle was not insured at the time of the accident, she became personally liable as a constructive self-insurer, pursuant to § 10–4–705(2), C.R.S. (1994 Repl. Vol. 4A), for payment of the PIP benefits provided for in §§ 10–4–706(1)(b) to 10–4–706(1)(e), C.R.S. (1994 Repl.Vol. 4A); and (2) under § 10–4–713(1), C.R.S. (1994 Repl.Vol. 4A), Evinger ordinarily would have been precluded from suing GGC to recover her PIP benefits.

Evinger claims, however, that she is entitled to recover PIP benefits from GGC because of the provisions § 10–4–713(2)(a) which state:

> [W]here a motor vehicle accident involves a private passenger motor vehicle and a nonprivate passenger motor vehicle, the insurer of the private passenger motor vehicle shall have a *direct cause of action for all benefits actually paid* by such insurer ... against the owner, user, or operator of the nonprivate passenger motor vehicle or against any ... organization legally responsible for the acts or omissions of such owner, user or operator. (emphasis supplied)

Applying this statute, a division of this court held that an uninsured motorist's cause of action against the tortfeasor's insurer for reimbursement of medical expenses paid by the uninsured motorist to his passenger does not accrue until the benefits are actually paid. *Sakala v. Safeco Insurance Co.,* 833 P.2d 879 (Colo.App.1992). The *Sakala* ruling, however, does not resolve the issue before us because there the meaning of the statutory phrase "actually paid" was not a matter in contention.

■ The interpretation of a statute is a question of law. *Dunlap v. Colorado Springs Cablevision, Inc.,* 855 P.2d 6 (Colo. App.1992). Hence, we need not defer to the trial court's interpretation that delivery of the promissory notes constituted actual payment; instead, we may review the question *de novo. Evans v. Romer,* 854 P.2d 1270 (Colo.1993).

■ In construing statutes, our primary task is to ascertain and give effect to the intent of the General Assembly by first looking to the language of the statute itself. *Colorado State Board of Medical Examiners v. Saddoris,* 825 P.2d 39 (Colo.1992). The words used should be given effect according to their plain and ordinary meaning. *Farmers Group, Inc. v. Williams,* 805 P.2d 419 (Colo.1991).

■ In 1979, the General Assembly amended the statute governing the PIP benefits recoverable in a direct action against the tortfeasor, as follows:

[T]he insurer of the private passenger motor vehicle shall have a direct cause of action for all benefits ACTUALLY paid by such insurer. (capitalization indicates word added)

That wording, though now expanded, remains in § 10–4–713(2)(a).

The legislative history of the amendment contains no discussion of the reason the word "actually" was inserted; however, we presume that, by adding the term "actually" to the phrase "benefits paid by such insurer," the General Assembly intended to change the meaning of the phrase. *See City of Florence v. Board of Waterworks,* 793 P.2d 148 (Colo. 1990) (in interpreting a statute, each word should be given effect). In our view, addition of the term "actually" narrows significantly the means of payment acceptable under the statute.

The plain and ordinary meaning of the words in question supports our interpretation. "Actual" means something real, substantial, or existing presently in fact as opposed to that which is potential, possible, or hypothetical. *Black's Law Dictionary* 34 (rev. 6th ed. 1990). "Payment" means the discharge of an obligation or debt. *Black's Law Dictionary* 1128 (rev. 6th ed. 1990). Thus, in our view, the plain meaning of "actually paid" connotes that discharge of the debt is required before an injured uninsured motorist may recover for PIP benefits by means of a direct action against the tortfeasor pursuant to § 10–4–713(2)(a).

■ Under both common law, *see Globe Express Co. v. Taylor,* 61 Colo. 430, 158 P.

717 (1916), and the Uniform Commercial Code, *see* § 4–3–802(1), C.R.S. (1992 Repl. Vol. 2) (Official Comment 3), the tender of a promissory note represents only "conditional payment." And, such delivery will be deemed as discharging the underlying debt only if the parties thereto so intend. *Berardini v. Hart,* 682 P.2d 519 (Colo.App.1984); J. White & R. Summers, *Uniform Commercial Code* § 13–20 at 541 (1980).

Here, the promissory notes on their face evince no intent by the parties to discharge Evinger's underlying obligation for medical services. Moreover, neither Evinger nor any of her medical providers testified that the notes were given or accepted with the intent of discharging her existing obligations. In fact, Evinger conceded on cross-examination that she gave the notes only because of the pending litigation.

Furthermore, when Evinger executed the promissory notes, she had no funds or assets with which to satisfy them. Consequently, her ability to discharge the notes on August 15, 1994, was wholly contingent upon her recovery in the litigation against GGC. Under these circumstances, the promissory notes merely constituted Evinger's acknowledgment of the antecedent debts and did not discharge the underlying obligation.

As to this issue, we note that our construction of this statute furthers the policies underlying the No Fault Act.

■ The General Assembly enacted the No Fault Act, in part, to require motor vehicle owners to purchase insurance policies which provide coverage for both liability and no fault benefits. *See* § 10–4–702; *Meyer v. State Farm Mutual Automobile Insurance Co.,* 689 P.2d 585 (Colo.1984). To permit Evinger to violate the No Fault Act by driving without insurance coverage and, nevertheless, to recover from GGC compensation for PIP benefits would contravene this purpose by rewarding her for not procuring automobile insurance. *See Osuala v. Aetna Life & Casualty Co.,* 608 P.2d 242 (Utah 1980).

Furthermore, under the No Fault Act, a PIP insurer who had not actually paid the PIP benefits it was required to pay would

not be allowed to recover those benefits under § 10–4–713(2)(a). Consequently, the motor vehicle owner who chooses not to obtain insurance and, hence, becomes a self-insurer cannot expect any greater rights than any other insurer.

We agree with the principle stated by the court in *Surman v. Griebel*, 439 F.Supp. 1118, 1121 (D.Nev.1977):

It is not unreasonable to preclude the plaintiffs from recovering a portion of their damages inasmuch as they have operated their vehicle in violation of ... law, and further have made no contribution to the automobile injury compensation system designed to spread the risk of loss among all who drive.

### III.

◼ We also agree with GGC's contention that, because Evinger's claim for relief for her PIP benefits under § 10–4–713(2)(a) has not accrued, GGC was entitled to offset from the jury verdict the amount of those benefits which Evinger would have received if insured. However, because we are unable to determine from the record before us the amount of PIP benefits that must be offset from the jury verdict, the issue must be addressed by the trial court.

At the conclusion of the trial, the court rejected GGC's tendered jury instruction and special verdict form which were based on *CJI–Civ.3d*, 11:21 (1993) and which sought offset from any liability judgment for PIP benefits to which Evinger would have been entitled had she procured insurance.

The court instructed the jury to consider, as elements of damages, Evinger's past and future economic losses for lost wages and impairment of earning capacity as well as for reasonable and necessary medical, hospital, and other expenses. However, it submitted a special interrogatory which only asked the jury to determine the amount of Evinger's reasonable and necessary medical expenses. The jury found that $25,380 of Evinger's total damages was for reasonable and necessary medical expenses.

GGC moved for a judgment notwithstanding the verdict on this issue and asked the trial court to offset $50,000 for unpaid PIP benefits from the verdict. The trial court, however, declined to offset any amount for PIP benefits from the jury award. This was error.

Section 10–4–713(2)(a) precludes recovery in tort of PIP benefits, except to the extent those benefits actually have been paid. If, as here, PIP benefits have not been paid, the jury cannot award any economic loss within PIP eligibility. *CJI–Civ.3d* 11:21 (1993). Thus, the trial court must offset the amount of PIP benefits to which the injured person would have been entitled from the total amount of the jury award. *Ramirez v. Veeley*, 757 P.2d 160 (Colo.App.1988). Furthermore, the trial court must deduct the amount of PIP benefits from the total amount of damages attributable to defendant's negligence *before* it reduces the judgment by the percentage of comparative negligence attributable to the plaintiff. *Hickenbottom v. Schmidt*, 626 P.2d 726 (Colo.App.1981).

The amount of PIP benefits attributable to medical expense has been established by the jury's answer to the special interrogatory, but the amount of past and future economic loss has not been determined. If the latter amount cannot be ascertained by stipulation or otherwise, a new trial on the issue of damages alone will be required.

Relying on *Pino v. Martinez*, 40 Colo.App. 333, 574 P.2d 518 (1978), GGC argues that a remand is unnecessary because this court may make the appropriate offset for PIP benefits. In *Pino*, however, the defendant stipulated that the medical expenses incurred by the plaintiff were reasonably and necessarily incurred as the result of the accident and the amount thereof was not disputed.

Here, Evinger sought recovery for lost wages and reduced earning capacity and the parties disputed the amount of these economic losses. And, the jury made no findings regarding what portion of Evinger's total damages was attributable to these losses. Without such a factual determination or a stipulation by the parties, we cannot calculate the appropriate offset.

Applying these principles, we conclude that the trial court should have offset $25,380 for

Evinger's medical expenses from the jury award. In addition, we hold that the trial court erred in not instructing the jury to make findings regarding the amount of all PIP compensable losses and by not reducing the judgment by that amount. Therefore, the cause must be remanded to the trial court for retrial to determine the appropriate offset for PIP compensable losses.

### IV.

■ Relying on *Ackerman v. Power Equipment Co.*, 881 P.2d 451 (Colo.App. 1994), GGC contends that §§ 13–21–101(3) and 13–21–101(4), C.R.S. (1987 Repl.Vol. 6A) govern the applicable interest rate for appealed judgments. We agree.

In an amended judgment, the trial court ordered post judgment interest to run at the rate of 9% per annum compounded annually pursuant to § 13–21–101, C.R.S. (1987 Repl. Vol. 6A). Section 13–21–101 governs the calculation of interest which the trial court must add to a compensatory damage award in a personal injury suit. If there is no appeal, §§ 13–21–101(1) and 13–21–101(2), C.R.S. (1987 Repl.Vol. 6A), provide that interest on a damage award is to be calculated at a fixed rate of 9% per annum, measured from the date the action accrued until the date the judgment is satisfied. If, as here, there is an appeal, §§ 13–21–101(3) and 13–21–101(4) provide for a variable rate of interest. *Ackerman v. Power Equipment Co., supra; Rodriguez v. Schutt,* 896 P.2d 881 (Colo.App. 1994) (certiorari granted May 22, 1995).

Evinger urges this court to reject the *Ackerman* construction of § 13–21–101 on the ground that such a construction will encourage frivolous judgment debtor appeals. We decline to do so and, instead, follow the reasoning and holding of *Ackerman.*

Accordingly, the judgment is reversed and the cause is remanded to the trial court with directions to conduct such proceedings as are necessary to determine the appropriate offset for benefits within PIP eligibility, to deduct them from the verdict amount, to deduct the 25% of negligence attributable to Evinger, and to calculate pre- and post-judgment interest on the remaining amount of the verdict, all as directed herein.

METZGER and TAUBMAN, JJ., concur.