**Suzanne PLAUT, Plaintiff,**

v.

**The ESTATE OF Dorathe J. ROGERS, Defendant.**

**Civil Action No. 95–WY–360–AJ.**

United States District Court, D. Colorado.

March 13, 1997.

Michael T. McConnell, Long & Jaudon, Denver, CO, Frank Plaut, Plaut, Lipstein, Mortimer, P.C., Lakewood, CO, for plaintiff.

John Mark Smith, Pittenger & Smith, P.C., Denver, CO, for defendant.

### ORDER ON DEFENDANT'S MOTION TO ALTER OR AMEND THE JUDGMENT AND FOR A NEW TRIAL AND ORDER ON PLAINTIFF'S MOTION TO ALTER OR AMEND THE JUDGMENT

ALAN B. JOHNSON, District Judge by designation.

The defendant's "Motion to Alter or Amend the Judgment and For a New Trial" and the plaintiff's "Motion to Alter or Amend the Judgment" came before the Court for consideration. The Court, having reviewed the motions, the pleadings of record, and being fully advised in the premises, FINDS and ORDERS as follows:

## Background

In August of 1992, plaintiff, Suzanne Plaut, was riding as a passenger on a motorcycle driven by David Schabloski in Grand County, Colorado when the defendant-decedent, Dorathe J. Rogers, a resident of Iowa, pulled off to the right-hand shoulder of the road and made a left turn directly in the path of the motorcycle. This caused the vehicles to collide and Ms. Plaut suffered permanent injuries. Plaintiff's claims against the defendant were for negligence causing personal injury and damages to her.

After trial and hearing all of the evidence, the jury rendered a verdict in plaintiff's favor, finding that Dorathe J. Rogers was 95% negligent and awarding plaintiff damages. Special Verdict Form B, at paragraph 6, provided as follows:

> 6. State your answers to the following questions relating to the damages incurred by the plaintiff and caused by the negligence, if any, of Dorathe J. Rogers and the negligence, if any, of the nonparty, David Schabloski:
>
> a. What is the total amount of damages, if any, incurred by the plaintiff for noneconomic losses or injuries, excluding any damages for physical impairment: Noneconomic losses or injuries are those losses or injuries described in numbered paragraph 1 of instruction 24. You should answer "0" if you determine there were none.
>
> Answer: $15,000
>
> b. What is the total amount of damages, if any, incurred by the plaintiff for economic losses, excluding any damages for physical impairment. Economic losses are those losses described in numbered paragraph 2 of Instruction 24. You should answer "0" if you determine there were none.
>
> Answer: $29,022
>
> c. What is the total amount of damages incurred by the plaintiff for physical impairment: You should answer "0" if you determine there were none.
>
> Answer: $7,000

Following trial, the Court entered its order requiring the parties to submit information concerning their respective positions concerning PIP benefits or medical expenses paid to date pursuant to the Colorado Automobile Accident Reparations Act. The parties have now done so and, as indicated in the Court's prior order, these issues will be decided upon the submissions of the parties.

In the defendant's Motion, it is asserted that sums up to $50,000 that may be available under PIP coverage and that are recoverable as eligible PIP benefits must be excluded from the jury's verdict for economic losses. In this instance, defendant argues that all amounts up to $50,000, pursuant to C.R.S. § 10–4–713(1) or $29,022 awarded to plaintiff for economic losses, should be excluded from the jury's award to plaintiff in this case. Defendant seeks an order amending the judgment to reflect this deduction, or alternatively, a new trial due to inadequate and improper jury instructions contrary to Colorado law for the no-fault provisions of C.R.S. § 10–4–713.

Plaintiff, in her counter motion, argues that only amounts that were actually paid to plaintiff under her PIP coverage, in this case $1,382, plaintiff's Affidavit regarding PIP benefits paid, should be deducted from the jury's verdict awarding damages for economic losses. Plaintiff's motion also asserts that this Court erroneously failed to award prejudgment interest in the amount of 9% interest rate provided by Colorado law. She also contends that post-judgment should be awarded at the rate of 9%, the statutory rate under Colorado law for judgments that are not appealed, rather than the federal post judgment rate of 5.64%.

Each of these three areas will be addressed separately.

## Standard of Review
## Motion for New Trial

Rule 59 Fed.R.Civ.P. is an embodiment of the common law principle that it is the responsibility of a judge who is dissatisfied with a jury's verdict to set that verdict aside and grant a new trial. 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2801 (1973). Generally stated, a "court should exercise its discretion

to grant a new trial 'whenever, in its judgment, this action is required in order to prevent injustice.'" *Whalen v. Roanoke County Bd. of Sup'rs,* 769 F.2d 221, 226 (4th Cir.1985) (quoting Wright & Miller § 2805). *See also MidAmerica Federal Savings and Loan Association v. Shearson/American Express. Inc.,* 886 F.2d 1249 (10th Cir.1989). The grounds for granting a new trial include, *inter alia,* that the verdict is too large; that the verdict is against the weight of the evidence; and, that the jury was improperly instructed. *See* Wright & Miller § 2805.

■ We will not grant a new trial "unless it is reasonably clear that prejudicial error has crept into the record or that **substantial justice** has not been done." 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2803 (1973); *see also Dixon v. Maritime Overseas Corp.,* 490 F.Supp. 1191, 1194 (D.C.N.Y.1980), *affirmed,* 646 F.2d 560 (2d Cir.1980), *cert. denied,* 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981) (emphasis added). The harmless error rule, Rule 61, Fed.R.Civ.P., provides that "[n]o error ... is ground for granting a new trial ... unless refusal to take such action appears to the court inconsistent with **substantial justice.**" (emphasis added). In granting a new trial a showing of prejudice "is essential." *Hoops v. Watermelon City Trucking Inc.,* 846 F.2d 637, 641 (10th Cir. 1988); *Ryder v. City of Topeka,* 814 F.2d 1412, 1424 (10th Cir.1987). A motion for a new trial ultimately invokes the sound discretion of the trial court. *Ryder v. City of Topeka,* 814 F.2d at 1424.

## Discussion

### 1. PIP benefits

The Court finds that the judgment as originally entered shall stand and that the jury's verdict will not be reduced by any PIP benefits that may have actually been paid to plaintiff in this case.[1] The defendant's motion seeking to reduce the jury award for PIP benefits will be denied, whether such reduction, if it was to be granted, is only for amounts actually paid to plaintiff as PIP benefits or for amounts for which plaintiff might have been eligible to recover PIP benefits.

The Court has reviewed the case law cited by the parties, noting that the parties have relied on much of the same law, including *Martinez v. Shapland,* 833 P.2d 837 (Colo. App. [Div. III] 1992). In *Martinez,* the plaintiff, in seeking a reversal and new trial because damages awarded were inadequate, argued that the trial court had erred in instructing the jury not to award damages for economic losses eligible for coverage under the Colorado Auto Accident Reparations Act, and that the No Fault Act's prohibition against an award of damages was overruled by the collateral source rule set forth in C.R.S. § 13–21–111.6. The appellate court disagreed and stated:

> Section 10–4–713(1), C.R.S. (1987 Repl. Vol. 4A) of the No–Fault Act provides that when losses resulting from an automobile accident are eligible for personal injury protection (PIP) coverage under an insurance policy, such losses are not compensable in a tort action. Thus, if a verdict against a tortfeasor includes an award for losses that are eligible for PIP benefits, the verdict is faulty and subject to correction by the trial court. See *Ramirez v. Veeley,* 757 P.2d 160 (Colo.App.1988) (reduction in amount of verdict required even when defendant failed to object to evidence jury instruction, and closing argument); *Camacho v. Daffern,* 622 P.2d 610 (Colo. App.1981).

> Section 13–21–111.6 sets forth the procedure to be followed by a trial court after a verdict has been returned in a tort action:
>
> > In any action by a person ... to recover damages for a tort resulting in death or injury to person or property, the court, after the finder of fact has returned its

---

1. Plaintiff's affidavit indicates that she was paid, for whatever reason, by her own automobile insurance carrier, Farmer's Insurance Company, a total amount of $1,382 for medical expenses related to the accident on August 17, 1992. There is no explanation why these benefits were paid, nor is there any historic evidence that has been presented to the Court during trial or otherwise explaining plaintiff's claim(s) to her own automobile insurance carrier as a result of the August 17, 1992 accident.

verdict stating the amount of damages to be awarded, shall reduce the amount of the verdict by the amount by which such person ... has been ... indemnified or compensated for his loss by any other person, corporation, insurance company, or fund ... except that the verdict shall not be reduced by the amount by which such person ... has been ... indemnified or compensated by a benefit paid as a result of a contract entered into and paid for by or on behalf of such person. [ ... ]

We agree with plaintiff that PIP benefits paid to an insured party would qualify as "benefit[s] paid as a result of a contract entered into and paid for by or on behalf of such person." However, if separate clauses in the same statutory scheme may be reconciled by one construction but would conflict under a different interpretation, the construction which results in harmony rather than inconsistency should be adopted....

Here, § 13–21–111.6 specifically states that compensation from an insurance company "shall reduce the amount of the verdict." And, as noted, the No–Fault Act precludes recovery for PIP benefits paid by plaintiff's insurance carrier. If we construe the statutory provisions together so as to give effect to each, the limited restriction on the adjustments a trial court is required to make before the entry of judgment, pursuant to § 13–21–111.6, cannot be interpreted as abrogating the legislative mandate in the No–Fault Act, that PIP benefits are excluded from any recovery obtained in a tort action....

We conclude that the collateral source rule codified in § 13–21–111.6 does not apply to payment received in the form of PIP benefits. These insurance contracts are excluded from the exception allowing compensation "by a benefit paid as a result of a contract entered into and paid for by or on behalf of such person."

*Martinez,* 833 P.2d at 840–841.

The Colorado Court of Appeals, Division I, in *Evinger v. Greeley Gas Co.,* 902 P.2d 941 (Colo.App.1995), discussed recovery of PIP benefits in a case brought by an uninsured motorist against Greeley Gas Company ("GGC") seeking to recover damages for the injuries she sustained in an automobile accident. Plaintiff was awarded $80,000 in damages by the jury, which also determined she was 25% at fault. The jury had also determined that $25,380 of the verdict was for reasonable and necessary medical expenses. GGC moved for judgment notwithstanding the verdict, requesting that the court offset $50,000 for unpaid PIP benefits from the amount of the jury verdict.

The court noted that owners of vehicles are required by the No Fault Act to obtain a complying policy of insurance including PIP coverage. The owner who operates a motor vehicle on a public highway without such a complying policy faces various consequences. 902 P.2d at 943–944. Before 1979, the uninsured motorist was treated as a "constructive self-insurer," and "if he paid no fault benefits to others or for himself, he had a right of reimbursement of such amounts actually paid against the person at fault." *Id.* That exception was limited in 1979, except in certain situations. However, the court stated further:

Section 10–4–713(2) (a), C.R.S. (1994 Repl. Vol. 4A), however, creates an exception to this rule if the other vehicle involved in the accident is a "nonprivate passenger vehicle." But, this "nonprivate passenger vehicle" exception itself contains an exception which allows a plaintiff that is an uninsured owner to recover only those PIP expenses that were "actually paid."

*Id.* Plaintiff had delivered to her health care providers promissory notes for the amounts owed to them. She contended that delivery of those promissory notes constituted actual payment of PIP benefits.

The vehicle involved in the accident and owned by GGC was a "nonprivate passenger vehicle." Plaintiff in the case argued that as a "constructive self-insurer" [an uninsured motorist] she should be permitted to take advantage of the "actual payment" exception for payment of PIP benefits. The court determined that delivery of the promissory notes to the health care providers did not constitute "actual payment" of PIP benefits and that plaintiff could not avail herself of

the exception she urged the court to find applied in her case. It stated:

The General Assembly enacted the No Fault Act, in part, to require motor vehicle owners to purchase insurance policies which provide coverage for both liability and no fault benefits.... To permit Evinger to violate the No Fault Act by driving without insurance coverage and, nevertheless, to recover from GGC compensation for PIP benefits would contravene this purpose by rewarding her for not procuring automobile insurance....

Furthermore, under the No Fault Act, a PIP insurer who had not actually paid the PIP benefits it was required to pay would not be allowed to recover those benefits under § 10-4-713(2)(a). Consequently, the motor vehicle owner who chooses not to obtain insurance and, hence, becomes a self-insurer cannot expect any greater rights than any other insurer.

*Id.* at 945-946 (citations omitted).

The court agreed with GGC's contention that it was entitled to offset from the jury verdict the amount of benefits plaintiff would have received if insured. It remanded to the trial court to address the amount of PIP benefits for economic losses that must be offset from the jury verdict.

In *Hickenbottom v. Schmidt,* 626 P.2d 726 (Colo.App.1981), the plaintiff sought an amended judgment. There, the trial court had first deducted the percentage of plaintiff's comparative negligence from the amount of damages, and then offset PIP payments that had been received for medical expenses and loss of income. Plaintiff argued that § 10-4-717, C.R.S.1973 (1979 Cum. Supp.) prohibited setting off the PIP payments received by her against the damages awarded. The appellate court disagreed:

Section 10-4-717, C.R.S. (1973) (1979 Cum.Supp.), applies to actions by or between insurance companies, and has no applicability where, as here, the injured party brings an action on her own behalf against the tortfeasor....

Section 10-4-713(a), C.R.S.1973 (1979 Cum.Supp.) provides that an injured party is precluded from recovering damages from a tortfeasor which are recoverable as direct benefits under § 10-4-706, C.R.S. (1973) (1979 Cum.Supp.). Therefore, the trial court did not err in setting off the P.I.P. payments received by plaintiff against the damages awarded to her by the jury. Section 10-4-713(1), C.R.S.1973 (1979 Cum.Supp.); *Pino v. Martinez,* 40 Colo.App. 333, 574 P.2d 518 (1978). However, the recoverable P.I.P. benefits are to be deducted from the total amount of damages attributable to defendant's negligence before the court reduces the judgment by the percentage of comparative negligence attributable to plaintiff. Colo.J.I. 11:21 (2d ed. 1980) (1981 Supp.); see §§ 10-4-713(1) and 10-4-706, C.R.S.1973 (1979 Cum.Supp.).

The trial court therefore erred in reducing the judgment to $7,500 prior to setting off the P.I.P. payments received by plaintiff.

*Id.*

The language used in the Colorado cases is not always helpful. In some of the cases, it is apparent that the courts have reduced the jury's verdict by amounts plaintiff had actually been paid as PIP benefits. In other cases, language is used loosely to suggest that all amounts eligible to be recovered as PIP benefits should reduce the judgment awarded in favor of a plaintiff. Some of the cases employ both "actually paid" and "eligible to be recovered as PIP benefits" language in the same case, without meaningful distinction.

■ Notwithstanding the foregoing discussion of some of the Colorado PIP case law, the difficulty in this case is that there has been no showing whatsoever that Dorathe J. Rogers' insurance, presumably obtained in Iowa where she resided, provided PIP coverage substantially similar to that described in the Colorado statutory scheme. There has been no showing that Suzanne Plaut, a passenger on David Schablonski's motorcycle, would have been entitled to PIP benefits without regard to fault under any policy of insurance providing coverage for vehicles involved in the August 17, 1992 accident. There has been no showing whatsoever that PIP coverage is anything more than a hypo-

thetical issue in this particular case. This becomes especially problematic when one considers that under the Colorado no-fault statutory scheme the driver and owner of the motorcycle, Schabloski, was only required to carry legal liability insurance and PIP coverage was not compulsory. C.R.S. § 10–4–706(1)(a) sets out required coverage for a motorcycle:

> Legal liability coverage for bodily injury or death arising out of the use of the motor vehicle to a limit, exclusive of interest and costs, of twenty-five thousand dollars to any one person in any one accident and fifty thousand dollars to all persons in any one accident, and for property damage arising out of the use of the motor vehicle to a limit, exclusive of interest and costs, of fifteen thousand dollars in any one accident.

*See also* C.R.S. § 10–4–705(3), which notes that for purposes of compulsory coverage, a motorcycle is included within the definition of motor vehicle and further provides that complying policy shall be limited to coverage required by section 10–4–706(1)(a) .

The Court has located no authority involving similar factual circumstances that supports the contentions of either party. In this case there is an individual who was a passenger on a motorcycle for which PIP coverage was not required, who has been injured by the negligent conduct of the driver of another vehicle. The Court discovered no authority requiring the injured party to first look to other potential outside sources of insurance compensation, whether existing automobile insurance for a vehicle neither involved, driven or occupied by anyone in the accident or the injured person's own health or medical insurance, prior to bringing a tort action seeking damages against the negligent actor, who may or may not have PIP coverage in compliance with Colorado law. Such a scenario makes no sense.

In the absence of genuine guidance, the Court has determined that it will not reduce the judgment awarded plaintiff for economic losses by any amount. The Court is of the opinion that this disposition does not frustrate the purpose of the Colorado No–Fault law which requires PIP coverage, in addition to liability coverage in many instances. This disposition attempts to recognize the limits of the Colorado No–Fault Act in a case where the injured plaintiff was neither an owner of the vehicle involved in the accident nor a driver of a vehicle involved in an accident. Plaintiff was merely a passenger on the motorcycle, and she would not have been required, as such, under the Colorado law to have complying no-fault coverage and insurance for PIP benefits. There is no evidence suggesting that she is an "insured" within the meaning of the Colorado Auto Accident Reparations Act in this set of circumstances. Further, the Court also believes that this ruling actually facilitates the purposes of the Colorado Auto Accident Reparations Act. Section 10–4–702 of that act, entitled "Legislative declaration," provides:

> The general assembly declares that its purpose in enacting this part 7 is to avoid inadequate compensation to victims of automobile accidents; to require registrants of motor vehicles in this state to procure insurance covering legal liability arising out of ownership or use of such vehicles and also providing benefits to persons occupying such vehicles and to persons injured in accidents involving such vehicles.

If the Court were to adopt the defendant's position on this issue, plaintiff's injuries would go uncompensated, even though the jury clearly determined that Dorathe Rogers was 95% negligent and responsible for plaintiff's injuries.

The circumstances of this case do not require granting the defendant's motion for a new trial. The Court believes that the jury was instructed in a manner which is consistent with the applicable provisions of state and federal law. Thus, the defendant's motion for a new trial on these grounds will be denied. The Court persists in its prior rulings with respect to defendant's tendered jury instructions. Those issues will not be revisited further in this order.

## 2. Pre–Judgment Interest

The defendant concedes in its response to plaintiff's motion that the appropriate pre-judgment rate of interest is 9% pursuant to

applicable Colorado law. C.R.S. § 13–21–101. This statute provides:

> In all actions brought to recover damages for personal injuries sustained by any person resulting from or occasioned by the tort of any other person ... whether by negligence or by willful intent ... it is lawful for the plaintiff in the complaint to claim interest on the damages claimed from the date the action occurred. When such interest is so claimed, it is the duty of the court in entering judgment for the plaintiff in such action to add to the amount of damages assessed by the verdict of the Jury ... interest on such amount calculated at the rate of nine percent per annum on actions filed on or after July 1, 1975.... On actions filed on or after July 1, 1979, the calculation shall include compounding of interest annually from the date such suit was filed.

Indeed, plaintiff requested prejudgment interest in her complaint. The Court erred when it failed to award prejudgment interest to the plaintiff at the rate of 9% per annum. The judgment shall be amended to award plaintiff prejudgment interest at the rate of 9% per annum, from August 17, 1992, the date that the action accrued, until date of judgment.

### 3. Post–Judgment Interest

■ Contrary to plaintiff's assertions, the appropriate post-judgment interest rate in all cases in federal court, including diversity cases, is governed by federal law. The applicable rate is set forth in 28 U.S.C. § 1961, entitled "Interest." This section provides, in part, as follows:

> (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment....

> (b) Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually.

> \* \* \* \*

All circuits have held that § 1961 applies in diversity cases and that the federal rate of interest applies. *See Forest Sales Corp. v. Bedingfield,* 881 F.2d 111 (4th Cir.1989) (citing cases) *Everaard v. Hartford Accident and Indemnity Co.,* 842 F.2d 1186, 1193–1194 (10th cir.1988). In this case, the judgment was entered January 31, 1997. On that date the applicable federal interest rate was 5.64%. Accordingly, the plaintiff's motion seeking to amend the judgment to provide for post judgment interest at the rate of 9% shall be denied.

### Conclusion

The defendant's motion to alter or amend the judgment and for a New Trial shall be denied, to the extent that it seeks to have the court reduce the jury verdict in favor of plaintiff in the amount by the amount of $29,022. The plaintiff's motion to alter the judgment shall be granted insofar as it seeks to provide for prejudgment interest at the rate of 9%. The plaintiff's motion to alter or amend the judgment shall be denied insofar as it seeks (1) to reduce the jury's verdict for plaintiff's economic losses by $1,382 as and for PIP benefits actually paid to plaintiff and (2) post-judgment interest at the rate of 9% provided by Colorado law. Post-judgment interest shall accrue on the judgment from January 31, 1997 until paid at the rate provided by federal law, 5.64%.

The Judgment in favor of plaintiff will be amended nunc pro tunc as follows:

> IT IS ORDERED AND ADJUDGED that the plaintiff, Suzanne Plaut recover of the defendant, the Estate of Dorathe J. Rogers, the sum of $48,470.90, plus prejudgment interest from August 17, 1992 to date of judgment at the rate of 9%, as provided by Colorado law, plus post-judg-

ment interest at the federal rate of 5.64% pursuant to 28 U.S.C. § 1961, and her costs of this action.

Accordingly, and for the foregoing reasons, it is therefore

ORDERED that defendant's Motion to Alter or Amend the Judgment and for a New Trial shall be, and is, DENIED. It is further

ORDERED that plaintiff's Motion to Alter or Amend the Judgment shall be, and is, GRANTED insofar as it seeks prejudgment interest at the rate of 9%. It is further

ORDERED that the plaintiff's motion to alter or amend the judgment shall be DENIED insofar as it seeks (1) to reduce the jury's verdict for plaintiff's economic losses by $1,382 as and for PIP benefits actually paid to plaintiff and (2) post-judgment interest at the rate of 9% provided by Colorado law. Post-judgment interest shall accrue on the judgment from January 31, 1997 until paid at the rate provided by federal law, 5.64%. It is further

ORDERED that the judgment entered January 31, 1997 shall be, and hereby is, AMENDED NUNC PRO TUNC, as follows:

IT IS ORDERED AND ADJUDGED that the plaintiff, Suzanne Plaut recover of the defendant, the Estate of Dorathe J. Rogers, the sum of $48,470.90, plus prejudgment interest from August 17, 1992 to date of judgment at the rate of 9%, as provided by Colorado law, plus post-judgment interest at the federal rate of 5.64% pursuant to 28 U.S.C. § 1961, and her costs of this action.

## AMENDED JUDGMENT
## NUNC PRO TUNC

This action came on for trial before the Court and a jury, Honorable Alan B. Johnson, District Judge, sitting by designation, presiding. The issues having been tried and the jury having duly rendered its verdict, it is

ORDERED AND ADJUDGED that the plaintiff, Suzanne Plaut, recover of the defendant, the Estate of Dorathe J. Rogers, the sum of $48,470.90, plus prejudgment interest

from August 17, 1992 to date of judgment at the rate of 9%, as provided by Colorado law, plus post-judgment interest at the federal rate of 5.64% pursuant to 28 U.S.C. § 1961, and her costs of this action.