**TELLURIDE RESORT AND SPA, L.P.,**
a Delaware limited partnership,
Plaintiff–Appellee,

v.

**COLORADO DEPARTMENT OF REVENUE, STATE OF COLORADO,**
Defendant–Appellant.

No. 99CA0034.

Colorado Court of Appeals,
Div III.

July 20, 2000.

Certiorari Granted April 9, 2001.

Kutak Rock, M. Lou Raders, John P. Jones, Amy A. Sumner, Denver, Colorado, for Plaintiff–Appellee.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Carolyn Lievers, Assistant Attorney General, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROY.

In this sales tax matter, the Colorado Department of Revenue (Department) appeals the trial court's judgment directing the refund of state and county sales tax and interest to Telluride Resort and Spa, L.P., a Delaware limited partnership (Telluride). We reverse.

In August 1990, Telluride Doral Resort and Spa Associates, L.P., (Doral) was, through a series of promissory notes secured by a series of deeds of trust, indebted to Sumitomo Trust & Banking Company, Ltd. (Sumitomo) for the principal amount of approximately $74 million. At the time of the final advance, Doral executed and delivered a "Supplemental Wraparound Advance Deed of Trust, Assignment of Rents, Security Agreement, and Financing Statement" (the deed of trust) which purported to cover both the real and personal property owned and used in the operation of a hotel. The deed of trust was recorded with the clerk and recorder of San Miguel County.

Doral defaulted and Sumitomo commenced foreclosure proceedings through the public trustee. A public sale was held at which Sumitomo was the successful bidder at $29 million, and the public trustee issued a certificate of purchase (the certificate) to Sumitomo.

Shortly thereafter, Sumitomo assigned the certificate and all of the debt and security instruments to Telluride. After the expiration of the redemption period, there being no redemption, the public trustee issued a public trustee's deed to Telluride.

The Department determined that Telluride had purchased an ongoing business and assessed state and county sales taxes on the furniture, fixtures, equipment, and supplies totaling $175,680.11, together with $69,690.10 in interest.

Telluride protested the assessment, arguing that no sale had occurred because the transaction involved the transfer of intangible personal property and was, therefore, not subject to sales tax and that the transaction was not a sale because it had acquired the personal property as a lienholder in foreclosure. On administrative appeal, the executive director of the Department concluded that (1) Telluride's purchase of the certificate was a taxable transfer of tangible personal property, and (2) the sale was not exempt from taxation by virtue of § 39–26–102(10)(j), C.R.S.1999.

Telluride paid the taxes due under protest and appealed the finding to the trial court. The trial court reversed, concluding that Telluride, by receiving Sumitomo's assignment of the certificate, obtained the same rights that Sumitomo possessed as a lienholder to the property and that, therefore, the transfer was not a "sale" as defined by § 39–26–102(1), C.R.S.1999, by virtue of § 39–26–102(10)(j). The trial court ordered the Department to refund the sales tax and interest.

On appeal, the Department argues that the trial court erred in holding that the assignment of the certificate of purchase was not a "sale" within the meaning of § 39–26–102(1) by virtue of § 39–26–102(10)(j). We agree.

At the outset, we note that security interests in personal property are granted, perfected, and enforced under the Uniform Commercial Code. Section 4–9–101, et seq., C.R.S.1999. When, however, the security agreement covers both real and personal property, the secured party may proceed as to both the real and personal property in accordance with the secured party's rights and remedies with respect to the real property. Section 4–9–501(4), C.R.S.1999.

We further note that the certificate of purchase and public trustee's deed are silent as to personal property and no other document issued by the public trustee purporting to convey personal property appears in the record. At all relevant times in this litigation the parties have assumed, and the parties again assume on appeal, that the public trustee's foreclosure could, and did, include the personal property pursuant to § 4–9–501(4). The parties also assume that the certificate of purchase issued by the public trustee and the public trustee's deed, though silent in this regard, conveyed Doral's interest in the personal property. For the purposes of this opinion, we accept as true that the public trustee foreclosure included, and that the certificate of purchase and public trustee's deed conveyed, Doral's interest in the personal property.

■ The Department asserts that there were two separate transactions in this case: (1) a foreclosure sale in which Sumitomo acquired Doral's title to the tangible personal property and (2) a subsequent sale of the tangible personal property by Sumitomo to Telluride by virtue of the assignment of the certificate of purchase. We agree with this characterization of the events at issue.

■ The interpretation of a statute is a question of law, and therefore, our review is de novo. *Evinger v. Greeley Gas Co.*, 902 P.2d 941 (Colo.App.1995).

■ When interpreting statutes, we must give full effect to the intent of the General Assembly. To determine the legislative intent, we look first to the words used, and these words and phrases must be read in context and accorded their plain and ordinary meaning. *Superior v. Midcities Co.*, 933 P.2d 596 (Colo.1997).

■ When construing tax statutes, there is a presumption that taxation is the rule and exemption from taxation is the exception. *Security Life & Accident Co. v. Heckers*, 177 Colo. 455, 495 P.2d 225 (1972). The absence of an express exemption indicates a legislative intent to tax. *Southwest Catholic Credit Union v. Charnes*, 665 P.2d 626 (Colo.App.1982).

Under § 39–26–104(1)(a), C.R.S.1999, a sales tax is levied and is to be paid:

On the purchase price paid or charged upon all sales and purchases of tangible personal property at retail.

■ "Tangible personal property" is a defined term meaning "corporeal personal property." Section 39–26–102(15), C.R.S. 1999. Corporeal property is that which can be perceived and is tangible. *Black's Law Dictionary* 1223 (7th ed.1999). "Tangible personal property" does not include intangible personal property, which constitutes mere rights of action and has no intrinsic value, such as contracts, deeds, or mortgages. *See Colorado Department of Revenue Regulation* 26–102.15, 1 Code Colo. Reg. 201–4.

Section 38–38–501, C.R.S.1999, provides, as to real property, and as to personal property pursuant to § 4–9–501(4), that title vests in the holder of the public trustee's certificate of purchase upon the expiration of the period of redemption allowed to the owner and to all junior interest holders entitled to redemption. Further, the statute provides that issuance of a public trustee's deed to the holder of the certificate of purchase confirms the transfer of title.

■ Put another way, title vests in the holder of a certificate of purchase subject to interests senior to the instrument being foreclosed and to the redemption rights of those entitled to redeem. It was this conditional

interest that was transferred by Sumitomo to Telluride.

For purposes of § 39–26–104(1)(a), the terms "sale" or "sale and purchase" are very broadly defined to include installment and credit sales, exchanges, and "every such transaction, conditional or otherwise, for a consideration, constituting a sale...." Section 39–26–102(10), C.R.S.1999. The definition does not include a significant number of transactions which can be generally characterized as the transfer of personal property between persons who, or entities which, had an interest, direct or indirect, in the personal property prior to the transfer. One transaction which is not included in the definition of "sale" is "the repossession of personal property by a chattel mortgage holder or foreclosure by a lienholder." Section 39–26–102(10)(j). It is not disputed that any "sale" was a "retail sale."

In our view, the existence of many specific narrow exclusions from the definition of "sale" and "sale and purchase" is further indication that the General Assembly intended the scope of the tax to be very sweeping and all, or virtually all, encompassing.

Here, the ownership interest of Doral in the tangible personal property was transferred to Sumitomo which already held a security interest in the property sold at the foreclosure sale and that transfer was evidenced by the certificate. But for the restriction on the definition of "sale" contained in § 39–26–102(10)(j), that transfer would have been a "sale" subject to a sales tax.

The subsequent transfer of Doral's ownership interest in the personal property to Telluride by a transfer of the certificate and assignment of Sumitomo's security interest was a "sale" within the meaning of § 39–26–102(10). We reach that conclusion because Telluride had no interest in the personal property prior to the assignment of the certificate together with the promissory notes, security interests, and deeds of trust. Telluride was not a chattel mortgage holder or lienholder at the time of the foreclosure sale, thus § 39–26–102(10)(j) does not take the transfer out of the definition of "sale."

Therefore, in our view, the assignment of the public trustee's certificate constitutes a "sale" or "sale and purchase" of tangible personal property within the meaning of § 39–26–102(10) and is a taxable event for sales tax purposes. The fact that the "sale" is subject to redemption does not, in our view, alter the character of the transaction at the time it occurred, or its tax implications.

Telluride argues that the assignment of the certificate is not a taxable "sale" or "sale and purchase" because the certificate is intangible property. This argument, however, ignores both the fact that the certificate is merely evidence of title to the personal property and the nature of the interest transferred.

Judgment reversed.

Judge PLANK and Judge CASEBOLT concur.